**REVISED**

United States Court of Appeals,

Fifth Circuit

No. 96-11348

Summary Calendar.

Frances E. WALTON, Plaintiff-Appellant,

v.

BISCO INDUSTRIES, INC., Defendant-Appellee.

Aug. 19, 1997.

Appeal from the United States District Court for the Northern District of Texas.

Before SMITH, DUHÉ and BARKSDALE, Circuit Judges.

JERRY E. SMITH, Circuit Judge:

Frances E. Walton appeals a summary judgment on her race and sex discrimination claims brought pursuant to title VII of the Civil Rights Acts of 1964, 42 U.S.C. § 2000e *et seq.* Finding no error, we affirm.

I.

Walton, a black female, was employed beginning in September 1990 as a Cell Manager at Bisco Industries, Inc. ("Bisco"). Cell Managers are expected to obtain a minimum annual net profit of 6%. During her first year, however, Walton achieved a net profit of only 0.3%. Bisco counseled Walton and indicated that she needed to improve.

After Walton failed to meet the profit target in her second year, she was placed on a ninety-day probationary period in July

1992 and was required to achieve break-even bottom line net income. When she failed to do so, she was terminated. During her two-year tenure at Bisco, sales in the Texas Cell declined by more than $300,000.

Walton was replaced by a white male and filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC"). After the EEOC determined that Walton had not been discriminated against impermissibly, she filed the instant action, alleging that she was terminated because of her sex and race. The district court granted summary judgment for Bisco, finding that, although Walton had alleged sufficient facts to create a genuine issue of material fact regarding whether Bisco's proffered reason for her termination was pretextual, she had failed to put forth any evidence to support her claim that Bisco had intentionally discriminated.

## II.

Walton argues that the district court erred in granting summary judgment after finding that she had produced evidence suggesting that Bisco's proffered reason for her termination was pretextual. According to Walton, "it is clear that once the District Court had determined that Walton had shown a prima facie case, and created a genuine issue of fact as to whether Bisco's proffered reasons for her termination were in fact the motivation for its decision, it had no choice but to submit the case to the jury."

We review a summary judgment *de novo.* *See Hanks v.*

2

*Transcontinental Gas Pipe Line Corp.,* 953 F.2d 996, 997 (5th Cir.1992). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c).

The parties do not contest the proper allocation of burdens of production in employment discrimination cases: First, the plaintiff must establish a *prima facie* case of discrimination; second, if he is so successful, the defendant must articulate some legitimate, nondiscriminatory reason for the challenged employment action; and third, if the defendant is so successful, the inference of discrimination raised by the *prima facie* case disappears, and the plaintiff then must prove, by a preponderance of the evidence, both that the defendant's articulated reason is false and that the defendant intentionally discriminated. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 510-11, 113 S.Ct. 2742, 2748-49, 125 L.Ed.2d 407 (1993); *Texas Dep't of Community Affairs v. Burdine,* 450 U.S. 248, 252-55, 101 S.Ct. 1089, 1093-94, 67 L.Ed.2d 207 (1981). If the defendant has successfully rebutted the presumption created by the *prima facie* case—that plaintiff's rejection was racially motivated—the factual inquiry proceeds to a new level of specificity. *Id.* at 255, 101 S.Ct. at 1094.

To sustain a finding of impermissible discrimination, the evidence taken as a whole must create (1) a fact issue regarding whether each of the employer's stated reasons was what actually

motivated it and (2) a reasonable inference that race or sex was a determinative factor in the actions of which plaintiff complains. *See Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 994 (5th Cir.1996) (en banc). Although the evidence necessary to support an inference of discrimination may vary from case to case, " "if the evidence put forth by the plaintiff to establish the prima facie case and to rebut the employer's reasons is not substantial, a jury cannot reasonably infer discriminatory intent.' " *Ontiveros v. Asarco Inc.,* 83 F.3d 732, 734 (5th Cir.1996) (quoting *Rhodes,* 75 F.3d at 994).

The plaintiff cannot succeed by proving only that the defendant's proffered reason is pretextual. *See St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 2751, 125 L.Ed.2d 407 (1993).[1] Rather, "a reason cannot be proved to be "a pretext *for discrimination*' unless it is shown both that the reason was false, *and* that discrimination was the real reason." *Id.* (emphasis in original).[2]

### III.

As Bisco concedes that Walton has made out her *prima facie* case, we proceed to investigate Bisco's proffered reason for her

---

[1]*See also Polanco v. Austin,* 78 F.3d 968, 976 (5th Cir.1996) ("The Supreme Court in *Hicks* explained that a plaintiff must prove both that his employer discriminated against him and that discrimination was a motivating factor in the treatment the plaintiff received.").

[2]*See also Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955, 959 n. 8 ("But *St. Mary's* requires more of the plaintiff than simply negating the employer's defense. The *St. Mary's* Court was clear in its directive: the employee has the burden of persuasion at trial.").

termination, i.e., that she failed to meet the required profit margin in two successive years and after having been placed on a probationary period. During her tenure, sales in the Texas Cell declined by over $300,000. This is a sufficient, nondiscriminatory reason for termination.

To support her pretext argument, Walton asserts that two white male Bisco employees who previously held her position as Cell Manager also failed to show a profit but had not been terminated. According to Walton, one such manager was promoted, while the other resigned.

Bisco counters that the promoted manager in fact improved the office's performance in other respects, while the resigned manager did generate profits. Bisco argues further that it terminated a third white male Cell Manager in the Arlington office for failing to show a profit, and that it had terminated five other sales managers company-wide, all of whom were white and four of whom were male, for failing to meet the profit margin requirement.

We assume *arguendo* that Walton's evidence is sufficient to create a genuine issue of material fact concerning whether Bisco's proffered reason for her termination was in fact the actual reason. Walton urges therefore that our inquiry is complete, as *St. Mary's* requires nothing more to survive a motion for summary judgment. We disagree.

In *St. Mary's,* the Court reviewed the *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), burdens of production, noting that once the plaintiff has satisfied

5

his burden to make out the *prima facie* case, *McDonnell Douglas* compels the defendant to produce evidence that the adverse employment actions were undertaken for a legitimate, nondiscriminatory reason. *See St. Mary's,* 509 U.S. at 506-07, 113 S.Ct. at 2746-47.[3] Once the defendant has presented evidence that, "*if believed by the trier of fact,* would support a finding that unlawful discrimination was not the cause of the employment action," the shifted burden of production becomes "irrelevant." *Id.* at 507, 113 S.Ct. at 2747 (emphasis in original). "The plaintiff then has the full and fair opportunity to demonstrate ... that the proffered reason was not the true reason for the employment decision *and that race was.*" *Id.* at 507-08, 113 S.Ct. at 2746-47 (internal quotes and citation omitted) (emphasis added).

Although the *St. Mary's* Court noted that "rejection of the proffered reasons will *permit* the trier of fact to infer the ultimate fact of intentional discrimination," it continued that rejection of the proffered reasons does not *compel* judgment for the plaintiff. *Id.* at 511, 113 S.Ct. at 2749 (emphasis in original) & n. 4 ("Even though (as we say here) rejection of the defendant's proffered reasons is enough at law to *sustain* a finding of discrimination, *there must be a finding of discrimination.*" (emphasis in original)). Thus, "nothing in law would permit us to

---

[3]Although the Court in *St. Mary's* was reviewing a motion for judgment as a matter of law following a jury verdict in favor of the plaintiff, whereas in the instant case we are reviewing a grant of summary judgment, the different procedural postures does not affect our inquiry, given that the standards of FED.R.CIV.P. 50 and 56 are the same. *See Rhodes,* 75 F.3d at 993 n. 4.

substitute for the required finding that the employer's action was the product of unlawful discrimination, the much different (and much lesser) finding that the employer's explanation of its action was not believable."  *Id.* at 514-15, 113 S.Ct. at 2750-51.

We have read *St. Mary's* therefore correctly to require that the plaintiff do more than simply negate the employer's proffered reasons:  The plaintiff retains the burden of production with respect to the alleged impermissible discrimination.  *See Bodenheimer,* 5 F.3d at 959 n. 8.[4]  In *Rhodes,* we did not diverge from the *Bodenheimer* construction of *St. Mary's,* but rather reiterated that "[t]he employer, of course, will be entitled to summary judgment if the evidence taken as a whole would not allow the jury to infer that the actual reason for the discharge was discriminatory."  *Rhodes,* 75 F.3d at 994.

Although we recognized in *Rhodes* that there may be a certain subset of cases in which the trier of fact may be able to infer discriminatory intent from "substantial evidence that the employer's proffered reasons are false," *id.,* such does not alter the plaintiff's ultimate burden of persuasion.

> The evidence may, for example, strongly indicate that the employer has introduced fabricated justifications for an employee's discharge, and not otherwise suggest a credible nondiscrimination explanation.
>
> By contrast, if the evidence put forth by the plaintiff to establish the prima facie case and to rebut the employer's

---

[4]To the extent that Walton believes that we have construed *St. Mary's* incorrectly, we note that absent an intervening Supreme Court decision or a decision by this court sitting en banc, we are bound by a prior panel's interpretation. *See Federal Deposit Ins. Corp. v. Dawson,* 4 F.3d 1303, 1307 (5th Cir.1993).

> reasons is not substantial, a jury cannot reasonably infer discriminatory intent.

*Id.*[5] We must ask therefore whether, assuming that Walton has presented sufficient evidence from which a jury could conclude that Bisco's proffered reason for her termination was pretextual, that evidence, plus whatever additional evidence put forth by Walton, is sufficient for a jury to infer that discrimination was the true reason for her allegedly disparate treatment.

Separate from her pretext evidence, Walton has offered nothing to suggest that impermissible discrimination underlies her termination. First, Walton argues that Bisco prevented her from taking any actions that may have improved her financial performance and that she "was restricted to doing what her supervisors instructed her to do." Even if believed, this evidence does not support an inference of impermissible sex or race discrimination, absent additional evidence demonstrating that Walton, as a black female, was treated differently from others similarly situated at Bisco.

Second, Walton contends that the fact that she was pregnant at the time she was terminated indicates impermissible sex discrimination. No one at Bisco with supervisory authority to fire her had been apprised of her pregnancy, however. Not only does Walton concede that she had not told Boush that she was pregnant

---

[5]*Accord Polanco,* 78 F.3d at 976-77 ("If the factfinder's verdict apparently rejects the defendant's proffered reason, enough evidence must exist in the record for the factfinder to infer that discrimination was the true reason for the disparate treatment.").

8

prior to her discharge, but she also does not even allege that any Bisco supervisor had knowledge of her pregnancy.

Finally, Walton ponders why she was not simply demoted to a sales representative position rather than being terminated from Bisco altogether. According to Walton, "[t]his sort of decision is clearly not a good use of Bisco's resources." Be that as it may, we do not view the discrimination laws as vehicles for judicial second-guessing of business decisions. *See Guthrie v. Tifco Indus.,* 941 F.2d 374, 378 (5th Cir.1991).

Because Walton has failed to produce any evidence of unlawful discrimination separate from her pretext evidence, we must ask whether hers is within the *Rhodes* subset of cases in which "[a] jury may be able to infer discriminatory intent ... from substantial evidence that the employer's proffered reasons are false." *Rhodes,* 75 F.3d at 994. We do not believe that this is such a case; the evidence put forth to rebut Bisco's reason for her termination is not substantial enough to permit an inference of discrimination. *See id.*

Walton does not dispute that she failed to attain the 6% profit margin. She admits that she was made aware of the requirement and that she was also counseled by Boush in July 1992 regarding her inability to meet the FY '91 and FY '92 sales and financial projections. She was placed on probation and was made aware that failure to meet the conditions of the probation would cause Bisco to evaluate her future employment. Thus, the proffered reason for Walton's termination—her failure to meet the required

9

financial margins—was not created *post hoc,* but was a known condition of continued employment.

With respect to Dan McCarthy, a former Cell Manager who Walton alleges also suffered losses as Cell Manager but was promoted to Area Manager, Bisco responded (and Walton does not contest) that he had been promoted based upon his work in improving the office's performance in other respects. Thus, the McCarthy evidence demonstrates that Cell Managers who fail to generate profits yet contribute to the improvement of the company in other respects are candidates for promotion, whereas others, such as Walton, who fail both to generate sufficient profits and to contribute to the firm in other ways are candidates for termination.

It is not discrimination to treat differently situated persons differently. Steve Crabtree, the second Cell Manager who Walton contends was not fired for failing to achieve the profit requirement, resigned voluntarily in his second year after failing to attain the requirement. His voluntary resignation does not permit the inference that, had he failed to resign, he would have been allowed to remain as Cell Manager.

Furthermore, Walton does not contest Bisco's evidence that it had fired, firm-wide, five other Cell Managers, all of whom were male and four of whom were white, for failure to attain the profit requirement, nor that another white male in the Arlington office had been fired for the same reason.[6] Finally, when asked

---

[6]Walton disputes only whether the Arlington Cell Manager in fact occupied that position during the years alleged by Bisco.

10

repeatedly during her deposition why she believed that she had been discriminated against, Walton was unable even to allege any specific facts.[7]

IV.

Walton has failed to produce either substantial evidence of pretext from which a jury could infer discriminatory intent or other evidence creating a reasonable inference that her sex or race

---

[7]Walton testified as follows:

> Q: What facts made you think you were discharged from employment because of your race?
>
> A: Because of the ongoing process that Steve Boush took me through, not just the day of termination, the ongoing.
>
> Q: What ongoing process?
>
> A: The ongoing of the way he treated me, the way he talked down to me, the way he spoke to me, the tone in which—that he used with me.
>
> Q: How did he treat you differently than other white sales managers?
>
> A: I don't know how he treated other managers in other offices.
>
> Q: What did he say to you that leads you to believe that race is the reason you were discharged from Bisco?
>
> A: I don't recall.
>
> Q: Other than your perception that he talked down to you, what facts lead you to believe that you were discharged from employment because of your race?
>
> A: I don't recall.
>
> Q: How about your sex?  What leads you to believe you were discharged from employment because of your sex?
>
> A: I don't recall.

11

was a determinative factor in Bisco's decision to terminate her.

The judgment, accordingly, is AFFIRMED.