Steve GIFFORD, Plaintiff,

v.

LONE STAR STEEL COMPANY,
Defendant.

No. 2:96–CV–0076.

United States District Court,
E.D. Texas,
Marshall Division.

Dec. 1, 1997.

Steplen Eldred Smith, Longview, TX, for Plaintiff.

David McCarley Ellis, Clark West Keller Butler & Ellis, Dallas, TX, for Defendant.

## MEMORANDUM OPINION

COBB, District Judge.

Before the court is Defendant's Motion for Summary Judgment, filed by Lone Star Steel

Company. Plaintiff, Steve Gifford, claims that he was fired from Lone Star Steel Company in violation of the Age Discrimination and Employment Act ("ADEA"), 29 U.S.C. § 621 *et seq.*, and the Texas Commission on Human Rights Act ("TCHRA"), Texas Labor Code § 21.001 *et seq.* Although Gifford made a prima facie case of age discrimination, Lone Star Steel successfully rebutted any inference of unlawful discrimination by claiming a reduction in work force as the legitimate reason for the termination. Because Gifford failed to meet his burden of showing that the Defendant's articulated rationale for the termination was merely a pretext for discrimination, the Motion for Summary Judgment is GRANTED.

## I. FACTUAL BACKGROUND

Lone Star Steel produces steel pipe for use in the petroleum industry. The pipe is produced through a multi-step process which includes forming and welding the pipe in the "Welding Department", and then finishing and testing the pipe in the "Finishing Department". The finishing department cuts the pipe to the lengths desired by the clients. The pipe is then threaded and a coupling device is attached so that it can be coupled with other lengths of pipe. The finishing department then tests the pipe to insure that the threading and structural integrity of the pipe meet American Petroleum Institute (API) requirements.

Steve Gifford was employed with Lone Star Steel in various capacities for the better part of 36 years. Gifford began his employment in 1958 in the security office and continued working in that capacity until the mid–1960s. He next worked as a pipe mill office assistant for a number of years. During his time as an office assistant, Gifford's duties included reviewing production records from the welding department and the finishing department to insure that they were in compliance with API requirements. Later, he was transferred to the position of labor foreman to supervise the clean-up operations in the pipe mills. He was eventually promoted through various production foreman positions to the position of general foreman of the welding department. As general foreman, he was responsible for all production operations in the # 2 welding operation, the stretch mill, and the standard pipe and galvanizing operations. In 1989, Gifford was terminated in a reduction in force.

In 1990, Gifford was rehired as a production foreman in the # 2 welding operation. He worked in that position until February 1993, when he was transferred to the finishing department to be a production foreman in the standard pipe area.[1] As production foreman for standard pipe, Gifford was responsible for supervising the cutting and facing of the ends of the pipe, the hydrostatic testing of the pipe, and the inspecting of the pipe for conformity with API specifications. Gifford was not involved in the threading process. Gifford was terminated in July 1994. He was sixty years old at the time. Gifford alleges that, at the time that he was given notice of his termination, he was told, "You can call it being retired, or fired, or a reduction in force, it really doesn't matter, you can call it anything you want." Gifford also alleges that, on a different occasion, Wingrove commented that Gifford should "be out fishing instead of working."

Lone Star Steel purports that Gifford was terminated in a company-wide reduction in force. The company's "Organizational Review" outlined the projected twenty-five percent reduction in force in the finishing department. Because of economic downturn, Lone Star intended to reduce the number of foreman in the finishing department by two and require that all the remaining foreman be capable of supervising every aspect of the finishing department, including the threading operations. The company claims that the quality and integrity of their product is greatly dependant on the threading work being done perfectly. Lone Star alleges that Gifford was chosen to be terminated because the other foreman in the finishing department had much more knowledge and experience in the threading process. The decisions to terminate were made on a department-by-department basis. Gifford had no experience

1. Lone Star move the standard pipe division from the # 2 welding department to the finishing department in the early 1990s.

with pipe threading or supervising the threading process. Therefore, Gifford was the least qualified foreman in the finishing department for purposes of being retained. The company does not dispute that Gifford had a good employment record or that he was basically competent to perform the duties for the position he held. The company merely claims that two foremen had to be terminated from the finishing department, in spite of competent performance, and that he was the least qualified of the foremen.

Gifford was not the only employee or foreman who was terminated. In fact, one foreman, who was not in the class protected by the ADEA, was terminated in May 1994. Another younger foreman, who had a degree in engineering, was transferred out of the finishing department around July 1994, and then terminated in September 1994. Additionally, in spite of the reduction in force, a foreman who is older than Gifford was retained in the stretch mill. Finally, since the reduction in force, Lone Star has not assigned any foremen to solely supervise standard pipe.

Gifford filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC"). The EEOC, in turn, gave Gifford the right to sue, alleging violations of the ADEA and the TCHRA. Lone Star Steel has filed a Motion for Summary Judgment. Gifford relies on affidavits by colleagues and deposition testimony of supervisors in response to the summary judgment motion. Gifford alleges that this evidence raises a material factual question as to whether Lone Star demonstrated discriminatory intent in terminating and not reassigning Gifford because other younger and allegedly less-qualified employees were transferred and retained.

## II. ANALYSIS

This court has federal question jurisdiction over the case, 28 U.S.C. § 1331, because the action was brought under the Age Discrimination and Employment Act, 29 U.S.C. § 621 *et seq.* Additionally, this court enjoys supplemental jurisdiction of Gifford's Texas Commission on Human Rights Act claim under 28 U.S.C. § 1367.

### A.

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue of material fact and that [it] is entitled to a judgment as a matter of law," Fed.R.Civ.P. 56(c). The moving party must show that, if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the nonmoving party to carry its burden of proof. *Celotex v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986) (citations omitted). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. Fed. R.Civ.P. 56(e); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986). Mere conclusory allegations are not competent summary judgment evidence, and they are, therefore, insufficient to defeat or support a motion for summary judgment. *Topalian v. Ehrman,* 954 F.2d 1125, 1131 (5th Cir.1992).

### B.

#### 1.

Age Discrimination and Employment Act claims are analyzed under the same framework as claims brought pursuant to Title VII of the Civil Rights Act of 1964. *Williams v. General Motors Corp.,* 656 F.2d 120, 127–28 (5th Cir.1981). Similarly, the Texas Commission on Human Rights Act is the state law correlative to Title VII of the Civil Rights Act of 1964. V.T.C.A., LABOR CODE § 21.001; *see also Thompson v. City of Arlington,* 838 F.Supp. 1137 (N.D.Tex.1993). Therefore, it is proper for this court to address the Plaintiff's state age discrimination claim concurrently with and in a manner perfectly consistent with the ADEA claim.

## 2.

◼ The Fifth Circuit, in *Williams v. General Motors Corp.*, clearly defined the standard that plaintiffs must meet to make a prima facie case of age discrimination in job reduction cases. It held that plaintiffs must: (1) show that they are in the protected age group and that they have been adversely affected; (2) show that they were qualified to assume other positions at the time of discharge or demotion; and (3) produce evidence, circumstantial or direct, from which fact-finders might reasonably conclude that (a) the defendants consciously refused to consider retaining or relocating the plaintiffs because of their age, or (b) the defendants regarded age as a negative factor in such consideration. *Williams, supra,* at 129–30.

In cases where the plaintiff successfully makes a prima facie case, an inference arises that the decision to terminate or demote was based on discriminatory intent. *Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 992 (5th Cir.1996). The defendant can rebut that inference by presenting evidence that, if believed by the trier of fact, would support a finding that unlawful discrimination was not the cause of the employment action. *Id.* at 993. A successful rebuttal can be achieved by the defendant proffering an age neutral reason for the plaintiff's position being eliminated or for the plaintiff not being re-assigned to a different position. If the defendant successfully rebuts the inference, the inference disappears and the burden shifts back to the plaintiff to demonstrate that the defendant's articulated rationale was merely a pretext for discrimination. *Id.*

◼ In order to meet the shifted burden, the plaintiff must present evidence that would support a finding that the employee's protected trait actually played a role in the employer's decision-making process and had a substantive influence on the outcome. *Id.* at 994. "[A] reason cannot be proved to be 'a pretext *for discrimination*' unless it is shown both that the reason was false, *and* that discrimination was the real reason." *Walton v. Bisco Industries, Inc.,* 119 F.3d 368, 370 (5th Cir.1997) (quoting *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 515, 113 S.Ct. 2742, 2751, 125 L.Ed.2d 407 (1993)) (emphasis in original).

We now apply the above principles to the summary judgment evidence in this case to determine whether enough evidence was produced to allow a rational jury to find that Gifford made a prima facie case and then successfully proved that the articulated reason was false and that discrimination was the real reason for the employment actions. In answering these questions, we view all the evidence in the light most favorable to the non-moving party, Gifford. *LeJeune v. Shell Oil Co.,* 950 F.2d 267, 268 (5th Cir.1992).

## C.

### 1. Prima facie case

Taking the evidence in light most favorable to Gifford, this court finds that Gifford made a prima facie case of age discrimination. Gifford presented evidence that he was sixty years old at the time of the termination, in the protected age range, and that the termination adversely affected him. He also presented affidavit evidence that he was qualified to perform the job he was in at the time of the termination and that he was qualified to perform other jobs that were available in the company. Finally, Gifford presented circumstantial evidence that, if believed by the trier of facts, would reasonably lead to the inference that age must have played a part in the decision to terminate him.

Gifford's evidence included affidavits from co-workers which stated that he was more qualified to be a foreman in the finishing department or the welding department than other employees who were retained in their positions or transferred to other positions. Because Gifford had many years of experience performing a variety of duties around the production mills, his co-workers felt that he was capable of supervising the finishing department or the welding department. The affidavits also contained opinions that expertise in threading was not a prerequisite to being a good foreman in the finishing department. The affidavits concluded that Gifford should have been retained, transferred, or rehired after being terminated because he was more qualified than the foremen who were retained, transferred, or hired around the same time Gifford was terminated. Lastly, Gifford testified in a deposition that

he was told on one occasion by Burt Wingrove, the manager of the finishing department and the person charged with reducing the workforce in that department, that he should be "out fishing instead of working". Upon giving notice of termination to Gifford, Wingrove allegedly said, "You can call it being retired, or fired, or a reduction in workforce, it really doesn't matter, you can call it anything you want."

Based on that superficial opinion evidence alone, a reasonable jury could conclude that Lone Star regarded age as a negative factor in its determination to terminate Gifford. This, however, does not end the inquiry because Lone Star Steel has rebutted the inference of discriminatory intent by presenting age neutral reasons for its failure to retain, transfer, or rehire Gifford.

### 2. Defendant's rebuttal evidence

First, Lone Star Steel alleges that, because of an economic downturn, it was operating at a lower margin of profit. Therefore, Lone Star reviewed its organization and decided to implement a company-wide reduction in force. The formal Organizational Review earmarked a twenty-five percent reduction in workforce in the finishing department. Burt Wingrove, the manager of the finishing department and the person charged with reducing the workforce in that department, decided that two foremen had to be terminated. Wingrove also determined that, with a reduced number of foremen in the department, the remaining foremen must be capable of supervising every aspect of operation in the finishing department. This included the ability to supervise the threading operation in the finishing department. Wingrove chose to terminate Gifford because he was the foreman with the least experience and expertise in the threading operation.

Second, Lone Star asserts that another foreman was transferred to the welding department, in lieu of Gifford, because the other foreman had a degree in engineering and was specifically requested by the manager of the welding department for the specific purpose of troubleshooting a few particular problems in that department.

Third, Lone Star claims that Gifford was not rehired when positions became available because he never reapplied for the position. Gifford admitted in his deposition that foremen do not have a right to be rehired without reapplying, only union workers have that right. Gifford also testified that he knew that positions were available and that the procedure for previously terminated applicants was to reapply, yet he never did.

Based on that evidence, Lone Star successfully rebutted the inference of discriminatory intent and shifted the burden back onto Gifford. Bearing in mind that Gifford has the burden of putting forth specific facts which create a genuine issue for trial that the articulated reasons were false and that discrimination was the real reason for the termination, this court finds that Gifford failed to put forth sufficient credible evidence to meet its burden and overcome the rebuttal evidence.

### 3. Plaintiff's shifted burden

#### a. Termination

Gifford relies on the affidavits of coworkers and close acquaintances to try to rebut Lone Star's contention that Gifford was the least qualified foreman and to prove the falsity of that as a reason for the terminating him. The affidavits contain opinions that experience in pipe threading or supervising the threading process is not a reasonable gauge of how qualified a foreman is to serve in the finishing department. The affidavits suggest that general supervisory experience in pipe production is sufficient to make someone completely qualified to supervise threading operations.

Additionally, Gifford relies on passing or "stray" remarks that Gifford should be fishing or that he was being retired or fired as proof that age discrimination was the actual reason for the termination. The evidence on the remarks, however, is not very credible in light of the inconsistent recollection of the words spoken and the lack of context of the statements. When questioned about what was said, Gifford could only remotely remember inexactly what was said and he never provided any details of the context for the statements in relation to the entire exchanges.

914

The affidavits do not raise a factual issue as to what is a reasonable method of gauging supervisory ability. Employment discrimination laws are not vehicles for federal courts to second-guess legitimate and reasonable business decisions. *Walton, supra,* 119 F.3d at 372. Deposition testimony and affidavits of opinions from disgruntled co-workers criticizing facially legitimate and objectively reasonable criteria for retaining employees do not create a fact issue as to whether the articulated reason was false. Furthermore, the alleged improper comments on their face do not refer to age and are not sufficient, with nothing more, to establish claim of age discrimination. *Waggoner v. City of Garland,* 987 F.2d 1160, 1166 (5th Cir.1993). This lack of persuasive evidence from Gifford, coupled with the fact that Lone Star has retained foreman older than Gifford in the welding department and terminated foremen younger than Gifford in the finishing department, supports the conclusion that Gifford has failed to proffer sufficient evidence to overcome Lone Star's reasoning in choosing to retain employees with expertise in the threading process.

Therefore, Gifford has failed to show that Lone Star's reason for terminating him was actually false or that discriminatory intent was the actual reason.

### b. Transfer

 Gifford failed to offer sufficient evidence to create a factual issue as to whether he should have been transferred instead of a different foreman, Bruce Rice. Again, Gifford relies on affidavits of co-workers and close acquaintances containing opinions that he was the most qualified foreman for transfer to the position in the welding unit. The affidavits stated that Gifford had more experience than Rice. They fail to rebut or contradict, however, the reason offered by Lone Star for selecting Rice—Rice had a degree in engineering and could help troubleshoot problems in the welding unit. Although Rice stated that he did not receive any special troubleshooting assignment, that alone (nor in combination with evidence that someone without a degree has more experience) does not raise substantial evidence that the reason was false. Nor does it establish that Lone Star's reliance on Rice's degree was a pretext for discrimination.

### c. Rehiring

Gifford presents no evidence to overcome Lone Star's rationale that it had no reason to rehire Gifford without Gifford reapplying. Nor did Gifford present a factual issue as to whether age discrimination played a role in Lone Star hiring younger foremen to positions for which Gifford did not apply.

### III. Conclusion

Gifford has failed to present sufficient evidence to raise factual issues regarding the real reason for terminating, not transferring, and not rehiring Gifford. Mere assertions of a factual dispute unsupported by probative evidence will not prevent summary judgment. *Anderson, supra,* 477 U.S. at 256–57. Lone Star is entitled, as a matter of law, to a favorable disposition of its Motion for Summary Judgment. It, therefore, is ORDERED, ADJUDGED, and DECREED that Defendant's Motion for Summary Judgment is hereby GRANTED.