**Annie L. MALVEAUX**

v.

**CONDEA VISTA COMPANY.**

No. 2:98 CV 1968.

United States District Court,
W.D. Louisiana,
Lake Charles Division.

Oct. 14, 1999.

Mark M Judson, McHale Law Firm, Lake Charles, LA, for Annie L Malveaux, plaintiff.

Annie L Malveaux, Westlake, LA, pro se.

Scott J Scofield, Robert E Landry, Scofield Gerard et al, Lake Charles, LA, for Condea Vista Co, defendant.

## MEMORANDUM RULING

WILSON, United States Magistrate Judge.

Presently before the court are Defendant's Motion to Strike (Doc. 35) and Defendant's Motion for Summary Judgment (Doc. 23).

Plaintiff was employed by Defendant as an outside operator. On January 1, 1996, it was discovered that she had left the plant without authorization. She was subsequently fired. Plaintiff claims that her termination was the result of racial and gender discrimination and asserts claims under Title VII, § 1981, and state discrimination statutes. Defendant has filed the motion for summary judgment presently before the court alleging that there is no material issue of fact that is in genuine dispute. Plaintiff has conceded that the state claims, the Title VII gender discrimination claim, and the § 1981 claim are not viable. (See Plaintiff's opposition memorandum, p. 8).

The proper framework for analysis is well established.[1] *See Walton v. Bisco Industries, Inc.*, 119 F.3d 368, 370 (5th Cir.1997); *Mayberry v. Vought Aircraft Company*, 55 F.3d 1086 (5th Cir.1995). First, Plaintiff bears the burden of establishing a prima facie case of discrimination. If Plaintiff establishes a prima facie case an inference of discrimination arises and Defendant must articulate some legitimate, nondiscriminatory reason for its chal-

---

1. Plaintiff does not contend that there is direct evidence of discrimination. *See Daigle v.* *Liberty Life Ins. Co.*, 70 F.3d 394, 396 (5th Cir.1995)

lenged action. It is enough that Defendant articulate a reason that, if believed, would support a finding that the decision to terminate Plaintiff was legitimate and nondiscriminatory. Defendant need not persuade the court that it was actually motivated by this reason. *Williams v. Time Warner Operation, Inc.,* 98 F.3d 179 (5th Cir.1996). If Defendant successfully articulates a legitimate, nondiscriminatory reason for the termination, the presumption of discrimination disappears, and Plaintiff must come forward with evidence to show that Defendant's proffered reason is false and that unlawful discrimination was a determinative factor in Plaintiff's termination. *Walton v. Bisco Industries, Inc., supra.; Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 994 (5th Cir.1996) (*en banc*). Plaintiff retains the ultimate burden of persuasion throughout. *Meinecke v. H & R Block of Houston,* 66 F.3d 77, 83 (5th Cir.1995).

Generally, in order to establish a prima facie case in a termination case the "plaintiff must prove that: (1) she is a member of a protected class; (2) she was qualified for the position that she held: (3) she was discharged: and (4) after being discharged, her employer replaced her with a person who is not a member of the protected class." *Meinecke, supra.* In the present case, Plaintiff, a black female, was replaced by a black female. Plaintiff concedes that she cannot establish the foregoing prima facie case. However, the parties agree that where a plaintiff is discharged for violation of a work rule the plaintiff can establish a prima facie case by showing "either that he did not violate the rule of that, is he did, white employees who engaged in similar acts were not punished similarly." *Green v. Armstrong Rubber Co.,* 612 F.2d 967, 968 (5th Cir.), *cert. denied,* 449 U.S. 879, 101 S.Ct. 227, 66 L.Ed.2d 102 (1980). *See also Mayberry v.*

*Vought Aircraft Company, supra* at 1090.[2] Plaintiff admits that she violated that work rule at issue. Accordingly, in order to establish a prima facie case, Plaintiff must be able to prove that "white employees were treated differently under circumstances nearly identical" to hers. *Mayberry v. Vought Aircraft Company, supra.* (internal quotes omitted).

At the time of the incident in question Plaintiff was working in Defendant's "600 unit." The 600 unit produces synthetic alcohol. There are approximately 50 heat exchangers in the 600 unit that contain flammable chemicals. Some of these reach temperatures as high as 650 degrees. The exchangers utilize hydrogen, steam, nitrogen, catalyst, and fuel. Operations in the unit are conducted at very high pressures and very hot temperatures. These conditions create a risk of fire or explosion should something go wrong.

The 600 unit is normally operated by a top operator, an inside operator, and an outside operator. The top operator and the inside operator normally perform their duties from inside the control room. They watch instruments that partially monitor the 600 unit. When they note a problem they contact the outside operator so that the outside operator can visually inspect the problem area, report back to the control room, and take corrective action if necessary. The outside operator also has the responsibility of personally inspecting the entire 600 unit for signs of problems. This is necessary because there are a number of gauges and problems that cannot be monitored or detected from the control room. Outside operators are necessary so that the 600 unit is not vulnerable to uncorrected and unreported problems that could lead to an explosion or other mishaps.

---

**2.** The court accepts for present purposes the parties' agreed statement of the law. However, it is noted that there is some confusion as to where the question of whether similarly situated employees outside Plaintiff's protect-ed class were treated similarly fits in the framework of analysis. *See Nieto v. L & H Packing Co.,* 108 F.3d 621, 623 n. 3 (5th Cir.1997).

The presence of the outside operator is also important for another reason. In the event of an explosion or other catastrophe, the 600 unit operators are required to meet at the Vista fire station. There, a head count is taken. If anyone is missing, rescue personnel are sent into the danger area to find the missing operator.

On January 1, 1996, Plaintiff was working as the outside operator on the 600 unit. She called her family and asked them to bring her some medicine. They refused. Shortly after having eaten lunch with her supervisor and the other operators Plaintiff went to the outside operator on another unit, Brian Babineaux, and asked him to cover for her while she went home to get some medicine. Mr. Babineaux reminded her to get permission from the supervisor. The supervisor testified that he was almost certain that he was in his office at the time. In any event he was available by radio. However, Plaintiff did not get permission from her supervisor. Instead she left the plant without authorization. Unfortunately, for Plaintiff, she was seen driving outside the plant by an off-duty supervisor who reported the fact to Plaintiff's supervisor. When Plaintiff returned to the plant Mr. Babineaux told Plaintiff that she had been discovered outside the plant and that she might lose her job. This reportedly upset her so that she left work and did not return to work until January 26, 1996. At that time she was terminated for violating Vista rule of conduct number 31. Rule 31 prohibits: "Leaving your assigned work area or the plant without permission or without being properly relieved." Plaintiff concedes that she, in fact, violated this rule.

Plaintiff contends that Owen Bellon was a white outside operator that was treated differently from her under circumstances nearly identical to hers. The summary judgment evidence shows that one morning Owen could not be contacted for approximately two hours while on his shift. An investigation revealed that after going to the atomizer penthouse in his unit for an inspection, Owen sat down and started reading a book. He possibly dozed off. Unknown to Owen he had forgotten to turn his radio back on after eating. Although Owen acknowledged that reading on the job was against the rules he indicated that he thought that his radio was on so that he could respond if needed. When Owen realized that his radio was off he radioed the control room to see if he was needed. Although the first controller had attempted to call Owen on the P.A. system it was verified that he could not hear the P.A. system from where he was. Owen was suspended for two 12–hour shifts for his work rule violations.

■ No reasonable jury could find that the circumstances of Owen's violations were "nearly identical" to those of Plaintiff's work rule violation. Owen did not leave his unit. Thus, he did not violate rule 31. The potential consequences were more serious in Plaintiff's situation. For example, had a mishap occurred the potential existed for rescue workers to be sent into a danger area to look for Plaintiff when she was not, in fact, at the plant. Moreover, Plaintiff was not available had the need arisen due to an intentional violation of rule 31. Owen's intentional rule violation was reading on the job. Ordinarily he would have still been available if needed. However, he was unavailable because he had unintentionally left his radio off. Owen's conduct was unacceptable and he was punished. However, his conduct was not nearly identical to Plaintiff's.

■ Plaintiff also suggests that Jerry Hetzler and Dave Chamberlain are white employees who were not terminated under circumstances nearly identical to hers. Besides Plaintiff three employees have been disciplined for violating rule 31. They were Jerry Hetzler, Dave Chamberlain, and Jason Fruge. None of these three were operators. Jason Fruge was, in fact, terminated for his violation of rule 31. Dave Chamberlain was given the option of immediately retiring or being fired. He elected to retire. Plaintiff contends

that since she was not given the option of retiring she was not treated the same as Mr. Chamberlain. However, Mr. Chamberlain was eligible to retire at the time. Plaintiff was not eligible to retire. Thus, the circumstances were materially different. No reasonable jury could find that they were nearly identical.

■ Jerry Hetzler was a mechanic. He left work two and one-half hours early one day in order to get an unauthorized head start on his vacation. He then lied about where he was when confronted. Mr. Hetzler was suspended without pay for 30 days. According to Defendant's summary judgment evidence Mr. Hetzler would have been fired were it not for the fact that he was a 27 year employee who was only one year shy of retirement. Accordingly, it was decided that he should be allowed to work one year and then retire. Additionally, as a mechanic, Mr. Hetzler performed his duties only after all operations in his work area had been shut down. He had no operating duties or responsibilities for live processing equipment. These distinctions are significant and no reasonable jury could find that the circumstances in Mr. Hetzler's case were nearly identical to the circumstances in Plaintiff's case.

Defendant moves to strike to affidavit of Joseph S. Lee. Essentially, Mr. Lee's affidavit establishes that Plaintiff violated rule 31; that he was satisfied with her work; that he was "very disappointed" with the way Plaintiff was terminated; and that he has worked for Defendant for 29 years and "has seen worse incidents where the operator was not terminated". Whether or not Mr. Lee was disappointed with Plaintiff's

termination is irrelevant and the motion to strike is granted as to that portion. His conclusory allegation that he has "seen worse incidents" does not create a genuine issue as to whether others "in nearly identical" circumstances were treated differently. *Hanchey v. Energas Co.*, 925 F.2d 96, 97 (5th Cir.1990). Defendant also moves to strike an unsigned "conciliation agreement" proposed by the EEOC. This is irrelevant and the motion to strike is GRANTED as to this document. Defendant also moves to strike the determination of the EEOC. The motion to strike is denied as to the EEOC determination.[3] However, this document is not sufficient to preclude summary judgment. To the extent that this document recites underlying facts the material underlying facts are not in dispute. To the extent that it asserts conclusions as to whether others were treated differently "in nearly identical" circumstances those conclusions are not sufficient to defeat a motion for summary judgment. *Hanchey v. Energas Co., supra.* Additionally, for the reasons noted above, such a conclusion is erroneous as a matter of law in that no reasonable fact finder could reach that conclusion based on the undisputed facts of this case. Except as specifically granted the motion to strike is DENIED.

There is no summary judgment evidence that would support a finding that white employees were treated differently under circumstances "nearly identical" to Plaintiff's. Accordingly, Plaintiff has failed to bear her burden of presenting summary judgment evidence establishing that a genuine issue exists as to whether she can

---

**3.** In the Fifth Circuit there is authority that "reasonable cause" determination by the EEOC is admissible while a "violation letter" is not. *E.E.O.C. v. Manville Sales Corp.*, 27 F.3d 1089 (5th Cir.1994), *cert. denied*, 513 U.S. 1190, 115 S.Ct. 1252, 131 L.Ed.2d 133 (1995). Apparently a violation letter is specifically authorized only in ADEA cases. 29 C.F.R. § 1626.15(b). However, the language of the EEOC determination in this case makes it more similar, in substance, to a violation letter than to a simple determination of prob-

able cause or reasonable cause. It states: "I have determined that there is sufficient evidence to establish that the Respondent engaged in unlawful employment practice in violation of Title VII...." This suggests that it should be treated as a violation letter and stricken. However, due to the lack of clear authority on this point this court has elected to not strike the E.E.O.C. determination. Nevertheless, for the reasons given, it is not sufficient to preclude summary judgment.

establish a prima facie case of discrimination. Even if it assumed that Plaintiff can establish a prima facie case the result is the same. The defendant has articulated a legitimate, nondiscriminatory reason for Plaintiff's termination. Plaintiff must produce summary judgment evidence that would allow a jury to conclude that the reasons given by Defendant were a pretextual and that race was a determinative factor in Plaintiff's termination. Plaintiff has failed to produce such evidence. Accordingly, Defendant's motion for summary judgment is GRANTED.