Ronald **KOKES**, Ph.D., Plaintiff,

v.

**ANGELINA COLLEGE**, Defendant.

**Civ.A. No. 9:01–CV–158.**

United States District Court,
E.D. Texas,
Lufkin Division.

July 25, 2002.

Gordon R. Cooper, II, Cooper & Cooper, Houston, TX, for plaintiffs.

Sherry L. Travers, Ryan Giffitts, Thompson Coe Cousins & Irons, Dallas, TX, Wayne D. Haglund, Lufkin, TX, for defendant.

## MEMORANDUM OPINION

COBB, District Judge.

Before the court is Defendant Angelina Junior College's Motion for Summary Judgment [Dkt. # 16], and the court having reviewed the motion and response on file is of the opinion that the motion be GRANTED with respect to the Plaintiff's federal claim and the court REMANDS the Plaintiff's remaining state law claims.

The plaintiff, Ronald Kokes ("Kokes"), a sixty-five year old, white male, originally filed suit in state court on June 5, 2001, alleging the defendant, Angelina Junior College, violated the Texas Labor Code and 42 U.S.C. § 1981 in that the College discriminated against him on the basis of his race, sex, and age by refusing to hire him for a position on its faculty. The College removed the case to federal court on July 6, 2001. On February 4, 2002, the plaintiff amended his complaint to add a claim of common law fraud to this action. After conducting discovery, the College has filed this motion for summary judgment.

## I. Summary Judgment Standard

A court should grant summary judgment when "there is no genuine issue as to any material fact and [ ] the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). A fact is material if it might affect the outcome of a case under the governing substantive law. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A genuine issue exists when, in the context of the entire record, a reasonable factfinder could return a verdict for the non-movant. *Lujan v. National Wildlife Federation,* 497 U.S. 871, 885–86, 110 S.Ct. 3177, 111 L.Ed.2d 695 (1990). The court must view the evidence introduced and all factual inferences from the evidence in the light most favorable to the party opposing summary judgment. *Eastman Kodak v. Image Technical Services,* 504 U.S. 451, 478, 112 S.Ct. 2072, 119 L.Ed.2d 265 (1992); *Lemelle v. Universal Mfg. Corp.,* 18 F.3d 1268, 1272 (5th Cir. 1994). However, this favorable presumption for the non-movant exists only when the non-movant presents an actual controversy of fact. *Little v. Liquid Air Corp.,* 37 F.3d 1069, 1075 (5th Cir.1994).

## II. Background

Angelina Junior College is a co-education, public junior college with approximately 4,000 students located in Lufkin, Texas. In January 2000, the College issued a vacancy announcement for an In-

structor of Psychology position in the Liberal Arts Division of the College. The position's job description stated that the instructor would be teaching freshman and sophomore level courses. The posting stated the following qualifications:

A minimum of a master's degree in Psychology or a master's degree with 18 graduate hours in Psychology required. Some college teaching preferred. Preference will be given to applicants with experience in community college teaching. Must possess the ability to interact with a diverse student population. Excellent oral and written communication skills required.

Twenty-seven applicants responded to this posting.

A six-member Faculty Screen Committee reviewed the applications and reduced the pool of applicants to nine. Dr. Larry Phillips, the College's president and the ultimate selecting official for this position, and the Faculty Screening Committee separately interviewed these nine candidates. Kokes contends that he was told that Dr. Patricia McKenzie, Dean of Instructions and Admissions, would also interview him, but that he never met with McKenzie. After conducting their interviews, the Faculty Screening Committee recommended four candidates to Phillips, including Kokes, by stating:

There were many great applicants to choose from, and the committee feels confident that anyone of the 4 individuals being recommended for the position possesses the qualities necessary for experiencing success if chosen for the position. The committee members do not want to rank these four fine individuals. We believe that anyone of these individuals is capable of doing a fine job.

Phillips ultimately chose Benetha Jackson, a thirty-five year old, African American woman, to fill the vacancy.

Kokes's main argument for why the College discriminated against him is centered around his contention that he was clearly the better qualified candidate. At the time he applied for the position, Kokes's curriculum vitae stated: Kokes received his Ph.D. in Counseling and his master's degree in Psychology in 1972 from the University of Iowa. In 1968, he received a master's in Counseling from Kearney State College. In 1961, he received a bachelor's degree from St. Thomas College and Seminary. Kokes taught at the University of California, Fresno branch for fifteen years and the University of Rochester Medical Center for six years. He had almost twenty years of clinical experience and in the Fall of 1998, he taught a class at Angelina Junior College. During his career, he had published forty-two articles and three book reviews, and had given fifty professional presentations. He had held a psychologist license in the state of California since 1982. Furthermore, while the letter of recommendation sent to Phillips by the Faculty Screening Committee did not rank the four individuals recommended by the committee, the committee's scoring sheets show that Kokes received the highest score of the four.

Jackson's curriculum vitae stated: Jackson graduated from Angelina Junior College. She received a bachelor's degree from Stephen F. Austin State University and received her master's degree in Psychology from that same school in 1995. She had not worked at a four-year college, but had taught at Angelina Junior College for four years. It does not appear that Jackson had published any articles. Additionally, the Liberal Arts Division Director, Larry Dickens, Dean McKenzie, and former-Instructor Margaret Lindsey, whose retirement created this vacancy, all strongly recommended Jackson for this position. Of the four candidates recommended by the Faculty Screening Commit-

tee, Jackson received the third highest score.

### III. Analysis

*A. Kokes's Federal Law Claim*

■ Section 1981 provides that all persons in the United States shall have the same contractual rights as white citizens. 42 U.S.C. § 1981(a); *LaPierre v. Benson Nissan, Inc.,* 86 F.3d 444, 448 n. 2 (5th Cir.1996). "Claims of racial discrimination brought under § 1981 are governed by the same evidentiary framework applicable to claims of employment discrimination brought under Title VII." *LaPierre,* 86 F.3d at 448 n. 2. Thus, "to succeed on a claim of intentional discrimination under Title VII ... or Section 1981, a plaintiff must first prove a prima facie case of discrimination." *Wallace v. Texas Tech Univ.,* 80 F.3d 1042, 1047 (5th Cir.1996).

■ In showing intentional employment discrimination, a plaintiff need not come forward with direct evidence of discriminatory intent. *LaPierre,* 86 F.3d at 449. Direct evidence of an employer's discriminatory intent is rare; therefore, plaintiffs must ordinarily prove their claims through circumstantial evidence. *Id.* A plaintiff may establish circumstantial evidence of intentional discrimination by demonstrating that a defendant's articulated nondiscriminatory rationale was pretextual. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 803–05, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 251–53, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). A plaintiff may demonstrate pretext either by showing that a discriminatory motive more likely motivated the employer, or that the employer's explanation is unworthy of credence. *Amburgey v. Corhart Refractories Corp. Inc.,* 936 F.2d 805, 813 (5th Cir.1991).

■ To establish a prima facie case under section 1981, a plaintiff must allege facts in support of the following elements: 1) the plaintiff is a member of a racial minority; 2) an intent to discriminate on the basis of race by the defendant; and 3) the discrimination concerns one or more of the activities enumerated in the statute. *Green v. State Bar of Texas,* 27 F.3d 1083, 1086 (5th Cir.1994). There are four enumerated activities in section 1981:

1. the right to make and enforce contracts;

2. the right of equal access to the judicial process to sue, be parties, give evidence;

3. the right to full and equal benefit of all laws and proceedings for the security of persons and property;

4. the right to subjection to like punishments, pains, penalties, taxes, licenses, and exactions of every kind.

42 U.S.C. § 1981. While the Fifth Circuit's prima facie standard for section 1981 requires the plaintiff to establish that he is a member of a racial minority, the Supreme Court has held that section 1981 prohibits racial discrimination against white persons as well as against racial minorities. *McDonald v. Santa Fe Trail Transp. Co.,* 427 U.S. 273, 287, 96 S.Ct. 2574, 49 L.Ed.2d 493 (1976). Thus, the fact that Kokes is white will not prevent him from establishing a prima facie case under section 1981. The plaintiff alleges that he was discriminated against by the College on the basis of his race and that such discrimination prevented him from entering into an employment contract with the College.

The College provided several legitimate, non-discriminatory reasons for selecting Jackson over Kokes, including:

1. She possessed more recent general Psychology teaching experience.

2. She possessed more community college teaching experience.

3. She had taught several semesters at the College as a full-time and adjunct Instructor.

4. She received better teaching references.

Kokes claims that his qualifications are so superior to Jackson's that the College's stated reasons for hiring Jackson over him must be pretextual. *Plaintiffs' Response to Defendants' Motion for Summary Judgment* at 7.

██ The Fifth Circuit has held that "a plaintiff can take his case to a jury with evidence that he was clearly better qualified than younger employees" who were selected for the position at issue. *Walther v. Lone Star Gas Co.*, 952 F.2d 119, 123 (5th Cir.1992); *see also EEOC v. Louisiana Office of Community Servs.*, 47 F.3d 1438, 1444 (5th Cir.1995) ("A factfinder can infer pretext if it finds that the employee was 'clearly better qualified' (as opposed to merely better or as qualified) than the employees who are selected."). "However, this evidence must be more than merely subjective and speculative." *Nichols v. Loral Vought Sys. Corp.*, 81 F.3d 38, 42 (5th Cir.1996). "To establish a fact question as to relative qualifications, a plaintiff must provide sufficiently specific reasons for his opinion; mere subjective speculation will not suffice." *Id.* The disparity between the two candidates must be great because the Fifth Circuit has stated that the evidentiary standard for this issue requires the "disparities in qualifications [to] be of such weight and significance that no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question." *Deines v. Texas Dept. of Prot. & Reg. Servs.*, 164 F.3d 277, 280–81 (5th Cir.1999). Moreover, in pursuing this inquiry, the Fifth Circuit noted that "the judicial system is not as well suited by training and experience to evaluate qualifications ... in other disciplines as are those persons who have trained and worked for years in that field of endeavor for which the applications under consideration are being evaluated." *Louisiana Office of Community Servs.*, 47 F.3d at 1445. Discrimination laws were not meant to be "vehicles for judicial second-guessing of business decisions." *Walton v. Bisco Industries, Inc.*, 119 F.3d 368, 372 (5th Cir. 1997). Thus, "[u]nless disparities in curricula vitae are so apparent as virtually to jump off the page and slap us in the face, we judges should be reluctant to substitute our views for those of the individuals charged with the evaluation duty by virtue of their own years of experience and expertise in the field in question." *Id.*

██ Kokes argues that he is so much more qualified than Jackson that this is such a case where the disparities between the two candidates jumps off the page and slaps one in the face. Kokes certainly appears qualified to have filled the vacancy at the College. The Faculty Screening Committee stated as such. At the same time, it is undisputed that Jackson was also qualified for this position. Kokes admitted as much in his deposition. *Kokes Deposition* p. 126 ln. 20–25; p. 127 ln. 1–12. Kokes feels that he was better qualified than Jackson, and that is his prerogative. He feels that the College attached little value to the attributes that made him a better candidate, but this was the College's prerogative.

Certainly different employers may weigh candidates' qualities in various ways and the qualities that one employer would say are essential might not be that important to another employer in the same field. For example, the court believes it is safe to say that the University of Texas and Angelina Junior College might look for different attributes in the people they hire to teach their students. In this case, the College provided several legitimate, non-

discriminatory reasons for why it selected Jackson. This court lacks the training and experience to appreciate what sometimes might be subtle differences between the needs of various employers and the court refuses to handcuff the president of Angelina Junior College by second-guessing his employment decision in this case, especially when all parties agree the person chosen to fill the vacancy was qualified for the position. In sum, this court cannot find that no reasonable person could have chosen Jackson over Kokes.

Kokes contends, however, that additional signs of pretext exist. He lists the following as signs that the College's justification for why it chose Jackson over him were merely pretext:

1. He was advised he would be interviewed by Dr. Phillips, the Faculty Screening Committee, and Dean McKenzie, but the McKenzie interview never occurred.

2. He was advised that the Faculty Screening Committee had a majority opinion in the selection process.

3. The College deviated from its usual practice of selecting the top candidate chosen by the Faculty Screening Committee.

■ Kokes claims he was advised he would be interviewed by Dean McKenzie, but that such an interview never took place. The court fails to see how this is evidence that the College's justifications for hiring Jackson are pretextual. While this interview did not occur, Kokes received an interview from the faculty committee whose purpose it was to recommend a candidate for the position and this committee recommended him as one of their top choices. Furthermore, Phillips, the ultimate decision maker, sat down and interviewed Kokes one-on-one for over an hour. Finally, Kokes was not the only candidate not interviewed by McKenzie. The lack of an interview with McKenzie

does not raise any doubt as to the validity of the justifications the College has given for why it chose Jackson.

As for his second sign of pretext, except for the fact that Kokes said he was told that the Faculty Screening Committee had a majority opinion in the selection process, there is no evidence that this is true. In fact, the College's Policy Guidelines for Personnel Selection Process states that the duties and responsibilities of the Faculty Screening Committee is to prepare recommendations and submit them to the division director. *Plaintiff's Response to Defendant's Motion for Summary Judgment* Exhibit 18. Nothing in the Guidelines states that this committee had a majority opinion in the selection process. Furthermore, the court is unsure what the plaintiff even means by "a majority opinion in the selection process" because it is undisputed that Dr. Phillips had the ultimate decision-making authority. The committee wrote that it would agree with and support Phillips's decision if he chose one of the four candidates it had recommended. *Plaintiff's Response to Defendant's Motion for Summary Judgment* Exhibit 11. Phillips exercised his authority by choosing one of the four candidates recommended by the Faculty Screening Committee just as the committee had requested.

■ Finally, Kokes claims the College deviated from its usual practice of selecting the top candidate chosen by the Faculty Screening Committee to fill the vacancy. He cites Phillips's letter to him explaining why he chose Jackson as evidence of the school's usual practice. *Plaintiff's Response to Defendant's Motion for Summary Judgment* at 8. The letter states: "We usually try to choose from among the top several candidates as ranked by the committee." *Plaintiff's Response to Defendant's Motion for Summary Judgment* Exhibit 10. Phillips's decision complied

with this statement of the College's practice.

Taken together, Kokes's signs of pretext do not raise a genuine issue of material fact with regard to the College's justifications for why it hired Jackson over Kokes. Again, discrimination laws were not meant to be "vehicles for judicial second-guessing of business decisions." *Walton*, 119 F.3d at 372. Accordingly, the court dismisses with prejudice the plaintiff's section 1981 claim.

*B. Kokes's State Law Claims*

 The College's motion also asked the court to dismiss the plaintiff's state law claims. Generally, when a district court dismisses all federal claims from a case prior to trial, the court declines to exercise jurisdiction over the pendent state law claims. *McClelland v. Gronwaldt*, 155 F.3d 507, 519 (5th Cir. 1998). Furthermore, 28 U.S.C. § 1367(c) provides that "[t]he district courts may decline to exercise supplemental jurisdiction over a claim under subsection (a) if—

(1) the claim raises a novel or complex issue of State law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction."

28 U.S.C. § 1367(c) (1994). While supplemental jurisdiction is discretionary, the Supreme Court has counseled that when a single federal claim is dismissed early in a case, the district court has "a powerful reason to choose not to continue to exercise jurisdiction." *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 351, 108 S.Ct. 614, 98 L.Ed.2d 720 (1988). Because the court has dismissed all of the plaintiff's federal claims before trial and because, as such, the state claims predominate in this case, the court chooses not to exercise jurisdiction over the plaintiff's remaining state claims against the College and remands those claims back to the Texas state court from whence they came. It is, therefore,

ORDERED, that Defendant Angelina Junior College's Motion for Summary Judgment [Dkt. # 16] is hereby GRANTED with respect to the Plaintiff's federal claim. It is further,

ORDERED, that the Plaintiff's federal claim against the Defendant brought pursuant to 42 U.S.C. § 1981 is DISMISSED with PREJUDICE. It is further,

ORDERED, that the Plaintiff's remaining state law claims against the Defendant are REMANDED to the Texas state court from whence they came.