United States Court of Appeals,

Fifth Circuit.

No. 96-50419

Summary Calendar.

Amador NIETO, Plaintiff-Appellant-Cross-Appellee,

v.

L&H PACKING CO.;  Surlean Meat Company, Defendants-Appellees-Cross-Appellants.

March 28, 1997.

Appeals from the United States District Court for the Western District of Texas.

Before HIGGINBOTHAM, WIENER and BENAVIDES, Circuit Judges.

BENAVIDES, Circuit Judge:

In this national origin discrimination case, Plaintiff-Appellant Amador Nieto appeals the district court's grant of summary judgment in favor of his former employer, L & H Packing Company and Surlean Meat Company (collectively "Surlean"). Because the competent summary judgment evidence before the district court did not raise a material fact issue that national origin was a motivating reason for Nieto's termination, the judgment of the district court is AFFIRMED.

I. Standard of Review

This court reviews the district court's grant of summary judgment de novo. *See, e.g., Ray v. Tandem Computers, Inc.*, 63 F.3d 429, 433 (5th Cir.1995). "Summary judgment is proper when no issue of material fact exists and the moving party is entitled to judgment as a matter of law. In determining whether summary

1

judgment was proper, all fact questions are viewed in the light most favorable to the non-movant." *Id.* (quoting *Moore v. Eli Lilly Co.,* 990 F.2d 812, 815 (5th Cir.), *cert. denied,* 510 U.S. 976, 114 S.Ct. 467, 126 L.Ed.2d 419 (1993) (citation omitted)).

## II. Background

In August 1992, Surlean was in the market to hire some supervisory personnel. Larry Lewis, Nieto's supervisor at a previous job and Surlean's night plant superintendent, suggested that Surlean's personnel department contact Nieto about one of its openings. Lewis discussed the possibility of hiring Nieto with Surlean's personnel director, and pursuant to Lewis's recommendation, Nieto was promptly hired to fill the position of night production supervisor.

During the course of his employment, Nieto received two written warning notices for his inadequate performance, one of which resulted in a three-day suspension.[1] In addition, during Nieto's shift on December 7, 1993, a light bulb broke, sending slivers of glass into 300-500 pounds of meat that was being processed. Nieto failed to follow direct instructions to label the container of contaminated meat "inedible."[2] Because inadequate

---

[1]Surlean claims that Nieto's file reflects four performance deficiencies that resulted in written warning notices. Nieto, however, contends that two of these alleged incidents did not occur. Viewing the evidence in the light most favorable to Nieto, we will disregard the two disputed warnings for purposes of reviewing the propriety of summary judgment in Surlean's favor.

[2]It is undisputed that both Larry Lewis and Jim Caillouet, Surlean's quality control supervisor, told Nieto to label the contaminated meat as inedible and that Nieto did not do so.

steps were taken to isolate the adulterated meat, this meat was mixed with 20,000 pounds of good meat, which had to be destroyed at a cost of approximately $20,000 to Surlean.

In light of the December 7 incident and Nieto's overall employment record, Lewis recommended that Nieto be terminated.[3] Because Lewis was not on duty at the time, Cliff Miller conducted Nieto's exit interview. Miller told Nieto only that he was being terminated because his failure to follow instructions cost Surlean $20,000.

Jim Caillouet, Surlean's quality control supervisor, was also subjected to discipline arising out of the December 7 incident. Although Caillouet properly instructed a quality control employee to put a "hold tag" on the contaminated meat, he did not check to make sure that his subordinate properly tagged the meat.[4] Caillouet was issued a first notice written warning for this incident, his first performance deficiency of any kind.

On November 16, 1994, Nieto filed the instant action in federal district court alleging that he was terminated because of his national origin in violation of Title VII of the Civil Rights

---

[3]Surlean claims that Lewis's recommendation was subject only to routine review and approval by its personnel department. Furthermore, Lewis testified by affidavit that he considered whether a suspension or other disciplinary action would have been appropriate under the circumstances. Based upon Nieto's entire employment record, including prior discipline, however, Lewis concluded that Nieto should be terminated. Nieto has offered nothing to contradict this evidence.

[4]It appears from the summary judgment record that the quality control employee who disregarded Caillouet's instructions was also terminated.

Act of 1964, as amended. 42 U.S.C. § 2000e *et seq.* On July 7, 1995, Surlean filed its motion for summary judgment, which was dismissed without prejudice in order to allow the completion of discovery and continuation of mediation. On October 24, 1995, Surlean re-urged its motion for summary judgment and filed a supplemental appendix based upon additional discovery. On March 28, 1996, the district court granted Surlean's motion for summary judgment and entered an order dismissing Nieto's claims.

On April 8, 1996, Nieto filed a motion for reconsideration of the district court's grant of summary judgment in favor of Surlean. On April 17, 1996, Surlean moved to strike an untimely affidavit filed by Nieto and moved for an award of sanctions against Nieto and his counsel. The district court entered an order denying Nieto's motion for reconsideration, striking Nieto's untimely affidavit, and denying Surlean's request for sanctions. Nieto timely filed notice of appeal from the district court's failure to reconsider its decision to grant summary judgment in favor of Surlean; Surlean timely filed notice of appeal regarding the district court's failure to assess sanctions and attorney's fees against Nieto and his counsel. This appeal followed.

### III. Discussion

Nieto, a Hispanic male, contends that he was unlawfully terminated on the basis of national origin in violation of Title VII. Nieto argues that Surlean's discriminatory intent is evidenced by the fact that he was terminated for his role in the December 7 incident, while Jim Caillouet, a similarly-situated Anglo, was

4

treated in a more lenient fashion. Because the competent summary judgment evidence viewed in the light most favorable to Nieto does not support his contention that he and Caillouet were similarly-situated employees and because the evidence does not otherwise create an issue of fact that Nieto's termination was motivated by his national origin, the district court properly granted summary judgment in favor of Surlean.[5]

The summary judgment evidence does not support Nieto's contention that he and Caillouet were similarly-situated employees. First, it is undisputed that two different supervisory employees told Nieto to put an "inedible" label on the contaminated meat and that he did not do so. In contrast, it is undisputed that Caillouet did not disobey a direct instruction from his supervisor. Moreover, while Nieto had a prior disciplinary record, which

---

[5]Prior case law has not consistently applied Title VII's burden-shifting framework to the question of whether a similarly-situated employee outside the plaintiff's protected class was treated more favorably. The Supreme Court has explained that this inquiry is especially relevant to a showing that the employer's proffered legitimate, non-discriminatory reason for its decision was pretext for discrimination. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 804, 93 S.Ct. 1817, 1825, 36 L.Ed.2d 668 (1973). *Accord Little v. Republic Refining Co., Ltd.,* 924 F.2d 93, 97 (5th Cir.1991). On the other hand, our court has held that such a showing may be an available avenue by which a plaintiff can establish a prima facie case of discrimination. *See Johnson v. Chapel Hill Indep. Sch. Dist.,* 853 F.2d 375, 381 (5th Cir.1988); *Green v. Armstrong Rubber Co.,* 612 F.2d 967, 968 (5th Cir.), *cert. denied,* 449 U.S. 879, 101 S.Ct. 227, 66 L.Ed.2d 102 (1980). Because strict application of the burden-shifting framework is not particularly helpful to our analysis of this case, we proceed directly to the ultimate question of whether Nieto has established a fact issue that national origin was a motivating factor in his termination. *See generally* Deborah C. Malamud, *The Last Minuet: Disparate Treatment After* Hicks, 93 MICH. L. REV. 2229 (1995). Therefore, we need not reconcile the apparent confusion in the case law on this issue.

included at least two written warnings and a three-day suspension, it is undisputed that Caillouet had no prior disciplinary record. Under these circumstances, Surlean's decisions to provide Caillouet with a written warning and to terminate Nieto do not raise a material question of fact that Nieto's termination was motivated by discriminatory animus.

Not only did Nieto fail to provide evidence that would allow a fact finder to infer that Surlean's decision was motivated by his national origin, but the record evidence provides substantial support to the contrary. For starters, eighty-eight percent of Surlean's work force is comprised of minorities.[6] Second, it is undisputed that the employee who was promoted to replace Nieto as night production supervisor was also Hispanic. While not outcome determinative,[7] this fact is certainly material to the question of

---

[6]*See Furnco Constr. Corp. v. Waters,* 438 U.S. 567, 580, 98 S.Ct. 2943, 2951, 57 L.Ed.2d 957 (1978) ("[T]he District Court was entitled to consider the racial mix of the work force when trying to make the determination as to motivation"). The 88% figure was based on Surlean's most recent reporting period under its affirmative action program. The figure included new hires, seventy-two percent of whom were Hispanic, as well as recently promoted employees, ninety-three percent of whom were Hispanic.

[7]The district court held that Nieto failed to establish a prima facie case of discrimination because the plaintiff's position was immediately filled by a member of the same protected class. The Supreme Court "has not directly addressed the question whether the personal characteristics of someone chosen to replace a Title VII plaintiff are material...." *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 527 n. 1, 113 S.Ct. 2742, 2758 n. 1, 125 L.Ed.2d 407 (1993) (Souter, J., dissenting). *Cf. O'Connor v. Consolidated Coin Caterers Corp.,* --- U.S. ----, ----, 116 S.Ct. 1307, 1310, 134 L.Ed.2d 433 (1996) ("The fact that one person in the protected class has lost out to another person in the protected class is ... irrelevant, so long as he has lost out because of his age"). Recent cases in our circuit support the district court's view that a plaintiff's replacement by a member of the same protected class

discriminatory intent. *See, e.g., Cumpiano v. Banco Santander Puerto Rico,* 902 F.2d 148, 155 (1st Cir.1990). Moreover, the supervisor who recommended that Surlean hire Nieto was the same supervisory employee who issued the authoritative recommendation to terminate Nieto's employment. This court has previously held that this situation gives rise to an inference of non-discrimination because it is unlikely that a decision maker "would hire workers from a group one dislikes (thereby incurring the psychological costs of associating with them), only to fire them once they are on the job." *Brown v. CSC Logic, Inc.,* 82 F.3d 651, 658 (5th Cir.1996) (quoting *Proud v. Stone,* 945 F.2d 796, 797 (4th Cir.1991) (internal citation omitted)).[8] Finally, in his deposition, Nieto

---

precludes the establishment of a prima facie case. *See Singh v. Shoney's Inc.,* 64 F.3d 217, 219 (5th Cir.1995); *Allison v. Gulf Employees Credit Union,* 836 F.Supp. 395, 397 (E.D.Tex.1993), *aff'd mem.,* 32 F.3d 565 (5th Cir.1994). These recent cases ignore earlier precedent in this circuit, however, which explicitly recognized "that the single fact that a plaintiff is replaced by someone within the protected class does not negate the possibility that the discharge was motivated [by] discriminatory reasons." *Hornsby v. Conoco, Inc.,* 777 F.2d 243, 246-47 (5th Cir.1985) (citing *Byrd v. Roadway Express, Inc.,* 687 F.2d 85, 86 (5th Cir.1982)). It bears noting that our earlier precedent on this point continues to be controlling law in this circuit. *United States v. Gray,* 751 F.2d 733, 735 (5th Cir.1985). While the fact that one's replacement is of another national origin "may help to raise an inference of discrimination, it is neither a sufficient nor a necessary condition." *Carson v. Bethlehem Steel Corp.,* 82 F.3d 157, 159 (7th Cir.1996). To the extent that the district court concluded otherwise, such conclusion was not supported by the controlling authority in this circuit.

[8]*But see Waldron v. SL Industries, Inc.,* 56 F.3d 491, 496 n. 6 (3rd Cir.1995) (agreeing with the position expressed by the Equal Employment Opportunity Commission as amicus curiae: "[W]here, as in *Proud,* the hirer and firer are the same and the discharge occurred soon after the plaintiff was hired, the defendant may of course argue to the factfinder that it should not find discrimination. But this is simply evidence like any other and should not be

claimed that he believed that Surlean was "out to get him" because he was successful at "what he was doing." Even if this accusation is true, it has long been the law in this circuit that "Title VII ... do[es] not protect against unfair business decisions[,] only against decisions motivated by unlawful animus." *Turner v. Texas Instruments, Inc.,* 555 F.2d 1251, 1257 (5th Cir.1977), *overruled on other grounds by Burdine v. Texas Dept. of Community Affairs,* 647 F.2d 513 (5th Cir.1981). Because Nieto has failed to present competent summary judgment evidence that his national origin was a motivating factor in Surlean's decision to terminate him, he has not raised a genuine issue of material fact sufficient to withstand summary judgment.[9]

We have also considered Nieto's other points of error and have determined that they are without merit. The judgment of the district court is, accordingly, AFFIRMED.

---

accorded any presumptive value.").

[9]Surlean cross-appeals and argues that the district court abused its discretion in denying Surlean's request for attorney's fees and sanctions based on the frivolity of Nieto's claim. We conclude that the district court did not abuse its discretion in this regard and note that while Nieto presented relatively weak evidence of discrimination, the law supporting a number of Surlean's arguments is both in flux and not as unquestionably in its favor as Surlean suggests. *See* notes 5, 7-8, and accompanying text. For the same reasons, we decline to exercise our discretion to sanction Nieto for prosecuting a frivolous appeal.