**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

_____

**No. 98-50588**
**SUMMARY CALENDAR**

_____

**ANTONIO VILLARREAL, JR.,**

**Plaintiff-Appellant,**

**v.**

**HORIZON/CMS HEALTHCARE CORPORATION,**
**a.k.a. HORIZON SPECIALTY HOSPITAL,**

**Defendant-Appellee**

_____

**Appeal from the decision of the United States District Court**
**for the Western District of Texas**
(SA-97-CV-267)

_____

December 30, 1998

Before HIGGINBOTHAM, JONES, and DENNIS, Circuit Judges.

PER CURIAM:[1]

Following his discharge from Horizon/CMS Healthcare Corporation ("Horizon"), Antonio Villarreal, Jr., a Hispanic male, filed suit in the Western District of Texas, claiming national origin and gender discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2, and the Texas Commission on Human Rights Act, Tex. Lab. Code Ann. §§ 21.051, 21.2585, and 21.259. The district court, partially adopting the

_____

[1]    Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in Local Rule 47.5.4.

1

report and recommendation of the magistrate judge, granted Horizon's motion for summary judgment on both claims. Villarreal timely appealed this judgment.

## I. INTRODUCTION

Villarreal was employed by Horizon as a respiratory therapist. While checking on a patient at Horizon, Villarreal noticed that Ms. Robbins, the other patient in the room, was cyanotic. Upon recognizing the emergency, Horizon's emergency procedures required Villarreal to "[d]etermine the absence of pulse and/or respirations an[d] the code status of the patient." The undisputed evidence shows that Villarreal did not check the patient's pulse or respirations. Instead, he sought to determine the code status of the patient -- i.e., whether the patient desired to be resuscitated or not in the event of respiratory or cardiac distress. After making inquiries with Torrez, Nurse Evangelista and Nurse Martinez, over the course of several minutes, Villarreal finally discovered that the patient was a "full code,"[2] not a "DNR."[3] Yet, even after pushing a crash cart to the patient's room, Villarreal admits that he did not stay to assist in resuscitation efforts.

Following an internal investigation, Horizon discharged Villarreal for failing to respond appropriately to an emergency situation. Although the district court found that Horizon's code

---

[2] In other words, the hospital staff should have immediately sought to revive the patient.

[3] Do not resuscitate.

policy was potentially ambiguous, universal standards of care still require that if a therapist, such a Villarreal, finds a patient in need of assistance and the patient's code status is unknown, then the therapist should call a "Code Blue" and initiate CPR.[4]  Thus, although Villarreal may not have violated the arguably ambiguous hospital code policy, the district court recognized that Horizon terminated Villarreal based on his overall inappropriate response to the emergency situation, not merely for his breach of hospital policy.

## II.ANALYSIS

When a district court grants summary judgment, this court reviews the determination de novo, employing the same standards as the district court.  See Urbano v. Continental Airlines, Inc., 138 F.3d 204, 205 (5th Cir. 1998).  Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, the record reflects that no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-24, 106 S. Ct. 2548, 2552-53 (1986); see also Fed. R. Civ. P. 56(c).

---

[4]    In  his deposition, Villarreal admitted that under universal standards of care, "if you're in doubt about a patient's status -- DNR status, you should start a [C]ode [B]lue."

3

Villarreal has asserted that Horizon violated Title VII[5] because he was subjected to disparate treatment, *i.e.* discharge, based on the manner in which Horizon disciplined similarly situated non-Hispanic, non-male employees involved in the care of Ms. Robbins.

In order to establish his Title VII claim, Villarreal must prove that Horizon treated other non-male, non-Hispanic employees in "nearly identical circumstances" preferentially based on a discriminatory motive. Little v. Republic Ref. Co., 924 F.2d 93, 97 (5th Cir. 1991); see also Davin v. Delta Air Lines, Inc., 678 F.2d 567, 570 (5th Cir. Unit B 1982). Under the burden shifting analysis set forth in McDonnell Douglas Corp. v. Green, Villarreal must initially submit sufficient evidence to prove: (1) he is a member of a protected class, (2) he was qualified for the position he held, and (3) his employer treated him differently with respect to his "compensation, terms, conditions, or privileges of employment"[6] than other employees in "nearly identical

---

[5]     Finding the legal analysis under Title VII similar to that employed under the Texas Commission on Human Rights Act, the district court dismissed Villarreal's causes of action under Texas state law. On appeal, however, Villarreal does not challenge the district court's dismissal of his state law claim, arguing the merits of his Title VII cause of action instead. See American States Ins. Co. v. Bailey, 133 F.3d 363, 372 (5th Cir. 1998) ("Failure to provide any legal or factual analysis of an issue results in waiver."). Regardless, the legal analysis employed under the state statute is the same as Title VII. See Austin State Hosp. v. Kitchen, 903 S.W.2d 83, 90 (Tex. 1995) (applying Title VII burden shifting analysis to disability discrimination claim under the Texas Commission on Human Rights Act).

[6]     Under Title VII, an employer may not

discriminate against any individual with respect to his

---

**4**

circumstances."[7]  411 U.S. 792, 802, 802 n.13, 93 S. Ct. 1817, 1824 n.13 (1973); see also Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 252-60, 101 S. Ct. 1089, 1093-97 (1981) (explaining McDonnell Douglas burden shifting analysis).

When the plaintiff successfully sets forth his prima facie case, the burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. See Burdine, 450 U.S. at 254-56, 101 S. Ct. at 1094-95; McDonnell Douglas, 411 U.S. at 802-03, 93 S. Ct. at 1824.  Once articulated, the presumption of discrimination established by the plaintiff's prima facie case is rebutted, and the plaintiff must show that the articulated reason is merely a pretext for unlawful discrimination. See Bodenheimer v. PPG Indus., Inc., 5 F.3d. 955, 957 (5th Cir. 1993).  To prove pretext, the plaintiff must show by a preponderance of the evidence that the employer's articulated reason is both false and that discrimination was the actual reason for the discharge.  See Walton v. Bisco Indus., Inc., 119 F.3d 368, 370 (5th Cir. 1997) (citing St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515, 113 S. Ct. 2742, 2752 (1993)).  Villarreal can

---

compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or . . . classify his employees . . . in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee. . . .

42 U.S.C. § 2000e-2(a).

[7]   See Davin, 678 F.2d at 570 (applying McDonnell Douglas analysis to Title VII disparate treatment claim).

neither establish a prima facie claim of disparate treatment nor prove that Horizon's asserted reason for his dismissal was a pretext for discriminatory conduct.

Villarreal is unable to show that any employees in "nearly identical circumstances" were not discharged by Horizon. Each employee who failed to respond adequately to the patient's emergency -- Rosemary Martinez, a Hispanic woman, Andrew Torrez, a Hispanic male, and Villarreal -- was discharged by Horizon. While Armida Evangelista and Gaye Padayao, two Filipino nurses, were retained by the hospital following a reprimand, the undisputed evidence clearly shows that their response to the patient's emergency was sufficiently dissimilar to warrant different disciplinary treatment. Nurse Evangelista did not have the same knowledge of Ms. Robbins's condition and was not presented with the same opportunity to call Code Blue, because Villarreal and Torrez only told her to check Ms. Robbins's feeding tube, while Nurse Padeyo immediately began emergency procedures when she saw Ms. Robbins. Cf. Nieto v. L & H Packing Co., 108 F.3d 621, 623 (5th Cir. 1997) (rejecting disparate treatment claim when company disciplined Hispanic differently from white because their degree of participation in single incident was dissimilar).

Assuming, arguendo, that Villarreal could establish his prima facie Title VII case, Horizon has articulated a legitimate, nondiscriminatory reason for his discharge -- poor performance during an emergency. Villarreal maintains, however, that Horizon's asserted reason is a pretext designed to conceal the true,

**6**

discriminatory basis for his discharge. Even if this were true, Villarreal would still be unable to carry the ultimate burden of proof that his discharge was motivated by intentional gender or national origin discrimination. See Walton, 119 F.3d at 370 (citing St. Mary's Honor Ctr., 509 U.S. at 515, 113 S. Ct. at 2752). Villarreal offers only conclusory allegations and subjective beliefs to support his claim of discrimination. These are insufficient. See Elliott v. Group Med. & Surgical Serv., 714 F.2d 556, 567 (5th Cir. 1983) (citing Houser v. Sears, Roebuck & Co., 627 F.2d 756, 758-59 (5th Cir. 1980)).

### III. CONCLUSION

Villarreal has offered no evidence directly or indirectly suggesting that his discharge was motivated by national origin or gender discrimination. As Horizon asserted, Villarreal's disregard for the welfare of a patient under his care ultimately resulted in his discharge. In fact, a Hispanic male was hired to replace him. Cf. Nieto, 108 F.3d at 624 (replacing employee with individual of similar protected class evidence of lack of discriminatory intent). Under these circumstances, Villarreal cannot support a Title VII claim.

**AFFIRMED.**

7