**Derosher E. PRICE**

v.

**FEDERAL EXPRESS CORPORATION**

**No. CIV. A. G–99–675.**

United States District Court,
S.D. Texas,
Galveston Division.

Jan. 12, 2001.

Ted C Litton, Royston Rayzor Vickery and Williams, Houston, TX, for mediator.

Gregg M Rosenberg, Gregg M Rosenberg & Associates, Houston, TX, for Derosher E Price, plaintiff.

Nancy Lynne Patterson, Littler Mendelson, Houston, TX, Mary Jane Palmer, Attorney at Law, Memphis, TN, Rick Paul, Federal Express, Memphis, TN, for Federal Express Corp., defendant.

### ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KENT, District Judge.

Plaintiff Derosher E. Price, an African–American male, is employed in the position of "Security Specialist III" with Defendant Federal Express Corporation ("FedEx"). FedEx hired a white male to fill the position of Zone Manager in Atlanta, a position for which Plaintiff was also considered. According to Plaintiff, Defendant's actions amount to racial discrimination in contravention of the provisions of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII"). Now before the Court is Defendant's Motion For Summary Judgment. For reasons set forth more fully below, FedEx's Motion is **GRANTED.**

### I. FACTUAL SUMMARY

FedEx is a private "transportation" company, delivering close to three million packages a day. Plaintiff Price was hired on April 15, 1997 as a "Security Specialist III" for FedEx's Houston office, a position which he still holds. In his capacity as Security Specialist III, Price is responsible for ensuring security awareness and conducting security investigations concerning package losses. Security Specialist III is the sixth position that Price has held with FedEx in his twelve years of service with the company. At the time of his interview for the job of Zone Manager, he had worked in a management position for four years and in the security department for six years. He has held the positions of Courier, Security Officer, Senior Security Specialist, and Operations Manager. Price

has a Bachelor of Science degree and an Associate of Science degree.

On June 23, 1997, a little more than two months after assuming the job of Security Specialist III, Price applied for the job of Zone Manager in Atlanta. Mark Hogan, Senior Manager for FedEx's Southern Region, began looking to fill the job of Zone Manager in Atlanta in December of 1996. At the time, Atlanta was one of the worst markets for theft and pilferage of customer's packages. Although Atlanta contained only about ten percent of the Southern Region's facilities and fifteen percent of the Southern Region's volume, it accounted for about thirty-seven percent of the Southern Region's losses. Hogan was also concerned with what he perceived to be low morale among security personnel in Atlanta and the lack of an effective working relationship with law enforcement in the region.

Hogan first posted for the position of Zone Manager in Atlanta on December 13, 1996. Posting is a way of advertising new position openings to those already working for the company. Price did not apply in response to this posting. Hogan posted a second time on March 14, 1997 and again on April 18, 1997. Price did not apply in response to these postings either. Other candidates, however, all of them white and with an earlier date of hire than the successful candidate, were considered and rejected. Hogan posted for the fourth time on June 20, 1997. This time, Price applied and was the only African–American to do so. Price's manager at the time, Jim Morgan, wrote an interoffice memorandum to Hogan stating that although Price had only held the position of Security Specialist III for two to three months, he would waive any length of service requirement and allow Price to apply.

Hogan interviewed three applicants. The other candidates were Gary Faulkner, originally hired June 1, 1992, and John Paone, originally hired January 12, 1997. Two other Senior Managers, Chris Connors and Alonzo McGee, served along with Hogan on the interview panel. Hogan asked each finalist to conduct a five to seven minute presentation on the importance of manager's interpersonal skills in motivating his workgroup to achieve results. Each interviewer completed their own interview forms and according to Defendant, reached their own conclusions regarding the interviewees independent of the other two interviewers.

Although Price testified that he felt the interview went well, he admits that some of the overheads he used as part of his presentation contained spelling or typographical errors. Hogan testified that other problems during the interview include that Price put his hands in his pockets and was jiggling his change during the interview, looked at the his overheads more than the interviewers, and exceeded the time limit. Price testified that he cannot recall making these interview *faux pas*.

The panel unanimously selected John Paone. It ranked Price second and Gary Faulkner third. According to Defendant, Paone met the written criteria set forth in the job description. Although Paone did not have a college degree and had only been employed with FedEx for six months, as a courier, at the time he was selected, he did have approximately fifteen years experience in management and approximately twenty-two years experience in security, including significant military and local law enforcement experience. His last performance review gave him a 6.1 on a 7.0 scale. One document from Paone's military background stated that there was no job in the U.S. Army that Paone could not master and that he should be assigned to difficult and challenging positions.

Plaintiff complains that Paone was passed through FedEx's Leadership Evaluation and Awareness Process ("LEAP") in only one week. Plaintiff alleges that under FedEx's policy, the program is supposed to take approximately six to twelve months to complete. Plaintiff notes that Hogan organized the panel that approved

Paone's expedited management training, and that prior to the selection of Paone, all Zone Managers in security had tenure with FedEx. Finally, Plaintiff observes that the United States Equal Employment Opportunity Commission ("EEOC") made a positive determination of discrimination against FedEx based on its investigation of Price's charges.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). When a motion for summary judgment is made, the nonmoving party must set forth specific facts showing that there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 250, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Issues of material fact are "genuine" only if they require resolution by a trier of fact. *See id.* at 248, 106 S.Ct. at 2510. The mere *existence* of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. Only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgment. *See id.* at 247–48, 106 S.Ct. at 2510. If the evidence is such that a reasonable fact-finder could find in favor of the nonmoving party, summary judgment should not be granted. *See id.; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Dixon v. State Farm Fire & Cas. Co.,* 799 F.Supp. 691 (S.D.Tex.1992) (noting that summary judgment is inappropriate if the evidence could lead to different factual findings and conclusions). Determining credibility, weighing evidence, and drawing reasonable inferences are left to the trier of fact. *See Anderson,* 477 U.S. at 255, 106 S.Ct. at 2513.

## III. The Racial Discrimination Claims

### A. Methods of Proving Discriminatory Intent

Price alleges that, because of his race, he was not selected for the position of Zone Manager in Atlanta. Price complains that FedEx's actions violated the provisions of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. ("Title VII").

In general, there are two ways a plaintiff can show he was a victim of intentional discrimination. "A plaintiff can prove discriminatory animus by direct evidence, or by an indirect or inferential method of proof." *Mooney v. Aramco Servs. Co.,* 54 F.3d 1207, 1216 (5th Cir.1995). If the plaintiff elects the former approach, the plaintiff must offer "direct" evidence of discrimination, defined as "evidence that, if believed, proves the fact of intentional discrimination without inference or presumption." *Woodhouse v. Magnolia Hosp.,* 92 F.3d 248, 252 (5th Cir.1996). The clearest example of "direct evidence" of discrimination would be "evidence that can be interpreted as an acknowledgment of discriminatory intent by the defendant or its agents." *Troupe v. May Dept. Stores Co.,* 20 F.3d 734, 736 (7th Cir.1994) (Posner, C.J.); *see also Mooney,* 54 F.3d at 1217–18 (analyzing characteristics of direct evidence).

Alternatively, a plaintiff may elect to prove the fact of intentional discrimination via the indirect or inferential approach. The indirect approach is governed by the familiar, tripartite burden-shifting scheme established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973), and *Texas Dept. of Cmty. Affairs v. Burdine,* 450 U.S. 248, 253–56, 101 S.Ct. 1089, 1093–95, 67 L.Ed.2d 207 (1981). However, "the *McDonnell Douglas* test is inapplicable where the plaintiff presents direct evidence of discrimination." *Trans World Airlines v. Thurston,* 469 U.S. 111, 121, 105 S.Ct. 613, 617, 83 L.Ed.2d 523 (1985);

see also *Brady v. Fort Bend County,* 145 F.3d 691, 711 (5th Cir.1998) (citing *Thurston* ); *Vaughn v. Edel,* 918 F.2d 517, 521 (5th Cir.1990) (same); *Ahrens v. Perot Sys. Corp.,* 39 F.Supp.2d 773, 780 (N.D.Tex.1999) (rejecting plaintiff's contention that she had stated a "direct evidence" case).

Plaintiff has offered no direct evidence of racial discrimination. Plaintiff points to nothing in the record that "can be interpreted as an acknowledgment of discriminatory intent by the defendant or its agents." *Troupe,* 20 F.3d at 736. To support the claim of intentional discrimination, Plaintiff offers: (1) evidence the successful candidate, Paone, was expedited through LEAP in one week, (2) evidence that the program usually takes six to nine months to complete, (3) evidence that Hogan, one member of the hiring panel, organized the panel that approved Paone's expedited management training, (4) evidence that Hogan also organized the panel that selected Paone, and (5) evidence, in the form of an allegation in an affidavit given by the Plaintiff himself and statistical evidence based on ratings given by employees, that Hogan had a history of discriminatory racial animus towards African–Americans. This evidence does not constitute direct evidence of racial discrimination. Rather, it is circumstantial or indirect evidence of the type commonly encountered in the *McDonnell Douglas–Burdine* method of proving racial discrimination. It is thus this method of proof that the Court now turns its attention.

## B.  *The Tripartite Burden Shifting Framework*

At the first stage of the *McDonnell Douglas–Burdine* burden-shifting approach, Plaintiff must establish a prima facie case of race discrimination. *See McDonnell Douglas,* 411 U.S. at 801, 93 S.Ct. at 1824; *Burdine,* 450 U.S. at 252, 101 S.Ct. at 1093; *St. Mary's Honor Cntr.*

*v. Hicks,* 509 U.S. 502, 506, 113 S.Ct. 2742, 2746–47, 125 L.Ed.2d 407 (1993); *Rhodes v. Guiberson Oil Tools,* 75 F.3d 989, 992 (5th Cir.1996) (en banc). If the plaintiff makes out a prima facie case, a presumption of discrimination arises, and the burden of production shifts to the defendant to proffer a legitimate, nondiscriminatory reason for its action. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. at 1824; *Hicks,* 509 U.S. at 507, 113 S.Ct. at 2747; *Rhodes,* 75 F.3d at 992–93.

If the defendant at this second stage of the *McDonnell Douglas–Burdine* analysis remains silent and fails to proffer a legitimate, nondiscriminatory reason for its action, there are two possible outcomes. If a reasonable fact-finder could not differ as to the existence of the facts constituting plaintiff's prima facie case, plaintiff will be entitled to judgment as a matter of law pursuant to either Fed.R.Civ.P. 50(a)(1) or 52(c). *See Hicks,* 509 U.S. at 509–510, 113 S.Ct. at 2748. But if reasonable minds could differ as to whether plaintiff has made out a prima facie case by a preponderance of the evidence, defendant is entitled to have the trier of fact decide that question. *See id.* Should the trier of fact find that plaintiff has indeed established his prima facie case by a preponderance of the evidence, it *must* render a verdict for the plaintiff, because, by definition, an unrebutted presumption mandates the finding of the fact presumed. *See id.* at 510, n. 3, 113 S.Ct. at 2748, n. 3.

Obviously, the *McDonnell Douglas–Burdine* framework is designed to put a price on defendant's silence at the second stage of the tripartite burden shifting framework. Thus a defendant may well choose not to remain silent at this stage, and instead attempt to meet its burden of production by proffering a legitimate, nondiscriminatory reason for its actions. If the defendant does so, the presumption of discrimination is rebutted, and it drops from the case.[1] *See Burdine,* 450 U.S. at 255,

---

**1.** Of course, while the rebutted *presumption*

drops from the case, the alleged state of af-

101 S.Ct. at 1094–95; *Hicks,* 509 U.S. at 507, 511, 113 S.Ct. at 2749 (once rebutted, the presumption "simply drops out of the picture").

At the third stage of the burden shifting framework, plaintiff is given a "full and fair opportunity to demonstrate" that Defendant's proffered nondiscriminatory reason is not true but instead a pretext for intentional discrimination. *Burdine,* 450 U.S. at 255–56, 101 S.Ct. at 1095; *see also Hicks,* 509 U.S. at 508, 113 S.Ct. at 2747. Although the *McDonnell Douglas–Burdine* framework shifts the burden of *production* between the plaintiff and defendant, it is crucial to recognize that "the ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Burdine,* 450 U.S. at 253, 101 S.Ct. at 1093; *see also Hicks,* 509 U.S. at 507, 113 S.Ct. at 2747.

### C. The Prima Facie Case

■ To establish a prima facie case of racial discrimination, a plaintiff must show:

(1) he belongs to a protected group, (2) he was qualified for the position held or sought, (3) he suffered an adverse employment action, and (4) he was replaced by someone outside the protected class *or* he was treated less favorably than other similarly situated *or* otherwise show that he was subjected to adverse treatment due to his race.[2] *See Urbano v. Continental Airlines, Inc.,* 138 F.3d 204, 206 (5th Cir. 1998); *Hornsby v. Conoco, Inc.,* 777 F.2d 243, 246–47 (5th Cir.1985). The Court finds that a reasonable fact finder could conclude that Price has shown the elements of his prima facie case. The first element is satisfied because the parties agree that Price is an African–American male, and thus undeniably a member of a protected group. The second element is satisfied because the parties agree that Plaintiff was qualified for the position. The third element is satisfied because failure to hire an otherwise qualified individual already within the company for a new position can constitute an adverse employment action. The fourth element is satis-

---

fairs underlying the prima facie case remains in the case if accepted as facts by the fact-finder. Thus the fact-finder is free to consider those facts, along with others, and draw reasonable inferences from them in the course of making the ultimate determination of whether the plaintiff was the victim of unlawful intentional discrimination. *See Burdine,* 450 U.S. at 255 n. 10, 101 S.Ct. at 1095, n. 10.

**2.** The disjunctive "or" in the fourth element of the prima facie case is a crucial component, yet all too easily elided. Indeed, some recent Fifth Circuit cases have stated the fourth element in such a way that a plaintiff cannot make out a prima facie case unless he can show that he was replaced by a person who is not a member of the protected class to which plaintiff belongs. *See Nieto v. L & H Packing Co.,* 108 F.3d 621, 624 n. 7 (5th Cir.1997) (recognizing conflict between earlier and later cases with respect to wording of the fourth element of plaintiff's prima facie case); *compare Singh v. Shoney's Inc.,* 64 F.3d 217, 219 (5th Cir.1995) (concluding that replacement by a member of the same protected class as plaintiff precludes establishment of a prima facie case) *with Hornsby v. Conoco, Inc.,* 777 F.2d 243, 246–47 (5th Cir. 1985) (recognizing that "the single fact that a

plaintiff is replaced by someone within the protected class does not negate the possibility that the discharge was motivated [by] discriminatory reasons"). Absent an en banc Fifth Circuit or Supreme Court opinion to the contrary, the earlier, less restrictive interpretation of the fourth element of the prima facie case is the binding precedent within this Circuit. *See United States v. Texas Tech Univ.,* 171 F.3d 279, 279 n. 9 (5th Cir.1999) ("Where two panel decisions conflict, the prior decision constitutes the binding precedent"); *United States v. Gray,* 751 F.2d 733 (5th Cir. 1985) ("Under our court rules any such inconsistency must be resolved in favor of the earlier line, absent intervening decisions by the Supreme Court"); *Nieto,* 108 F.3d at 621 n. 7 (noting that insofar as the district court's decision was based on recent but conflicting decisions interpreting this element of the prima facie case, "such conclusion was not supported by the controlling authority in this circuit"). In any event, Price plainly satisfies even the more restrictive interpretation of the fourth element, since it is undisputed that FedEx selected Paone, a white male, rather than Price, an African–American male, for the position of Senior Field Service Technician.

fied because Paone, a white male, was selected for the position sought by Price.

### D. *FedEx's Nondiscriminatory Justification*

Defendant's burden of producing evidence in support of the legitimate, nondiscriminatory reason underlying its action is "extremely light." *See Thornton v. Neiman Marcus,* 850 F.Supp. 538, 543 (N.D.Tex.1994). Defendant may satisfy that burden merely by producing any evidence, "which, *taken as true,* would *permit* the conclusion that there was a nondiscriminatory reason for the adverse action." *See Hicks,* 509 U.S. at 509, 113 S.Ct. at 2748 (emphasis in original). Moreover, the "defendant need not persuade the court that it was actually motivated by the proffered reasons." *Burdine,* 450 U.S. at 254, 101 S.Ct. at 1094. The defendant can even discharge his burden of production at this stage by proffering an *illegal* justification. *See Hazen Paper Co. v. Biggins,* 507 U.S. 604, 611, 113 S.Ct. 1701, 1707, 123 L.Ed.2d at 338 (1993) (holding that defendant had proffered a "legitimate" nondiscriminatory justification sufficient to satisfy his burden under the second stage of the *McDonnell Douglas–Burdine* framework, even though the proffered justification was found to violate another body of law, § 510 of the Age Discrimination in Employment Act of 1967).

FedEx has submitted competent evidence which tends to show that Paone was a significantly better qualified candidate and thus hired instead. This is certainly evidence which, if believed by the trier of fact, would permit the inference that the adverse action was motivated by a nondiscriminatory reason. Consequently, the Court finds that FedEx has carried its burden of production at the second stage of the *McDonnell Douglas–Burdine* framework. The presumption of discrimination created by Price's prima facie case stands rebutted, and thus disappears from the case. *See Burdine,* 450 U.S. at 255,

101 S.Ct. at 1094–95; *Hicks,* 509 U.S. at 507, 511, 113 S.Ct. at 2747, 2749.

### E. *The Pretext Stage*

The third stage of the McDonnell Douglas–Burdine framework is commonly referred to as the "pretext stage," an unfortunate and potentially misleading label. At this stage the plaintiff, having lost the benefits of the presumption of discrimination, is given a "full and fair opportunity to demonstrate" that Defendant's proffered nondiscriminatory reason is not true but instead a pretext for intentional discrimination. *Burdine,* 450 U.S. at 256, 101 S.Ct. at 1095; *see also Hicks,* 509 U.S. at 508, 113 S.Ct. at 2748. The label "pretext stage," and other shorthand references to "pretexts," are potentially misleading insofar as they suggest that the plaintiff, by demonstrating the simple falsity of the defendant's proffered nondiscriminatory reason, has necessarily discharged his ultimate burden of persuasion: demonstrating that, more likely than not, he was a victim of unlawful intentional discrimination. In *Hicks,* the majority chided the dissent for conflating the term "pretext," understood to mean mere falsity of the employer's justification, with the more precise phrase, "pretext for discrimination." *See Hicks,* 509 U.S. at 513–14, 113 S.Ct. at 2750–51. As the Court explained, "a reason cannot be proved to be 'a pretext for *discrimination*' unless it is shown *both* that the reason was false, *and* that discrimination was the real reason." *Id.* at 513, 113 S.Ct. at 2752. (emphasis in original).

The Fifth Circuit has adopted the teachings of *Hicks,* and held, in an en banc decision, that for a plaintiff to withstand a motion for summary judgment, a two part test must be satisfied. The plaintiff must produce competent evidence which (1) creates a fact issue as to whether each of the employer's stated reasons was what actually motivated the employer, and (2) creates a reasonable inference that discrimination was a "determinative factor" in the actions of which plaintiff complains. *See Rhodes,*

75 F.3d at 994 (en banc); *see also Casarez v. Burlington N./Santa Fe Co.*, 193 F.3d 334, 337 (5th Cir.1999) (citing two prong *Rhodes* test); *Scott v. University of Mississippi*, 148 F.3d 493, 504 (5th Cir.1998) (quoting elements of two part test enunciated in *Rhodes* ); *Walton v. Bisco Indus. Inc.*, 119 F.3d 368, 370 (5th Cir.1997).

Moreover, the *Rhodes* decision established that the traditional sufficiency-of-the-evidence standards apply to evidence submitted by plaintiffs in order to avoid summary judgment in discrimination actions. *See Rhodes*, 75 F.3d at 993 (adopting the sufficiency-of-the-evidence standard articulated in *Boeing Co. v. Shipman*, 411 F.2d 365 (5th Cir.1969) (en banc)). To create a jury question, there must be "a conflict in substantial evidence." *Id.* (quoting *Boeing*, 411 F.2d at 375). Substantial evidence is defined as "evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions." *Id.* (quoting *Boeing*, 411 F.2d at 374). A "mere scintilla" of evidence is not sufficient to create a jury question. *Id.* Moreover, it is possible for a defendant to prevail on his motion for summary judgment even if the plaintiff's evidence is more than a scintilla; this will be so if plaintiff's evidence is "so overwhelmed by contrary proof as to yield a directed verdict." *Id.* (quoting *Neely v. Delta Brick & Tile Co.*, 817 F.2d 1224, 1226 (5th Cir.1987)). Because direct evidence of discrimination is exceedingly rare, a plaintiff is permitted to satisfy his burden of persuasion by the introduction of circumstantial evidence. *See Burns v. Texas City Refining, Inc.*, 890 F.2d 747, 751 (5th Cir.1989). However, circumstantial evidence, like direct evidence, must be "substantial." *See Rhodes*, 75 F.3d at 993.

Combining these principles, it is clear that for Price's claims to survive FedEx's Motion For Summary Judgment, Price must produce "substantial evidence" which (1) creates a fact issue as to whether the decision to hire Paone's was actually motivated by FedEx's perception that Paone was better qualified, *and* (2) creates a reasonable inference that racial discrimination was a determinative factor in the decision not to promote Price to the position ultimately filled by Paone. The Court now turns to the question whether Price has met this burden.

### F. *The "Clearly Better Qualified" Standard*

■ If a plaintiff can demonstrate that he is *clearly* better qualified, yet nevertheless was passed up for a position, a reasonable fact-finder may conclude that discrimination motivated the decision. The more a plaintiff's qualifications are shown to be superior, the less rational the employer's decision not to promote him appears to be, until at some point illicit discrimination may be inferred to explain what otherwise is an inexplicable and irrational decision. While pointing to clearly superior qualifications is one permissible way to demonstrate intentional discrimination, a plaintiff is hardly *required* to make this showing. *See EEOC v. Manville Sales Corp.*, 27 F.3d 1089, 1095 n. 5 (5th Cir.1994) (noting that a showing by plaintiff that he was "clearly better qualified" is "merely one of many ways that a plaintiff can show" that the employer's actions were a pretext for discrimination; thus plaintiff "may prevail without a showing that he was clearly better qualified than those employees who were not terminated."); *Amburgey v. Corhart Refractories Corp.*, 936 F.2d 805, 814 (5th Cir.1991) ("[E]vidence that the plaintiff was clearly better qualified would be one way of showing" the defendant's proffered nondiscriminatory reasons were actually a pretext for discrimination.); *Bradley v. Delta*, No. Civ. A 1:97CV119–D–D, 1998 WL 378325 at *4, n. 3 (N.D.Miss. May 5, 1998) (rejecting defendant's argument that plaintiff is required to show that he was "clearly better qualified.").

■ Price attempts to demonstrate racial discrimination by proffering evidence to show that he was clearly better

qualified than Paone. Price notes that he has better educational qualifications than Paone. Price is a college graduate, whereas Paone has 102 semester hours of college credit, but no degree. In addition, Paone had only worked for FedEx for six months, and as a courier at that; he had no experience in FedEx security. Defendant counters that Paone had more years of experience in management than Price (albeit not at FedEx), more years in security and law enforcement experience than Price, and more experience with local law enforcement *in Atlanta* than Price. Paone had almost fifteen years military experience including intelligence work and also had been a detective in Peachtree, Georgia. As the position at issue was Zone Manager for Atlanta, Paone's experience in law enforcement in Georgia is particularly relevant. Indeed one of the objectives that Hogan sought to accomplish in filling the position was to strengthen ties with local law enforcement. Although Price may have had more years of service with FedEx, years of service with a company cannot be equated with superior qualifications. *See Bodenheimer v. PPG Indus., Inc.,* 5 F.3d 955, 959 (5th Cir.1993). FedEx could have chosen to hire someone from outside the company. The overwhelming evidence demonstrates that Plaintiff was not clearly better qualified, and that in fact Paone may have been clearly better qualified. Thus, the Court is forced to conclude that a jury finding that Plaintiff was clearly better qualified could not survive a Motion for Directed Verdict and hence absent further evidence summary judgment is appropriate. *See Rhodes,* 75 F.3d at 993.

### G. *Independent Evidence of Racial Discrimination*

Plaintiff argues in the alternative that Hogan had discriminatory animus towards African–Americans and this evidence prevents Defendant from obtaining summary judgment. In support, Plaintiff presents evidence that Hogan received less favorable ratings from employees in a year in which he supervised more African–American employees. Plaintiff offers the results of annual surveys given to employees that Hogan supervised for the years 1995 through 2000. In 1997, when Hogan supervised more African–Americans, only seventy-eight percent of respondents gave Hogan a favorable rating in various categories, whereas in 1996 and 1998, one hundred percent gave Hogan favorable ratings. This evidence, Plaintiff argues, demonstrates that Hogan has a racial animus toward African–Americans.

There are a myriad of problems with Plaintiff's proffered statistical evidence. Most importantly, it is not substantial. For all of the years covered other than 1997, the number of employees surveyed was *five*. In 1997, the year containing the disparity, the number of employees surveyed was twenty. With surveys of such a small number of people, an increase in the number of people surveyed, rather than racial animus, can easily explain the decrease in favorable ratings. Plaintiff does not demonstrate that the persons responding unfavorably were African–Americans, and with such little data, such cannot be inferred. In addition, Plaintiff does not present the testimony of any employee surveyed that Hogan had a racial animus toward African–Americans. Moreover, in 1997, the number of people responding "favorable" to the query "My manager treats me with respect" was ninety percent (eighteen employees), whereas five percent (one employee) responded neutrally and only five percent (one employee) responded "unfavorable." In short, the Court must conclude that statistical data in the form of surveys of five to twenty employees, over a period of five years, unaccompanied by any direct evidence of racial animus is wholly inadequate to defeat summary judgment in this context. Moreover, there is no evidence in the record that Hogan, or FedEx, ever discriminated on the basis of race in terms of promotion or hiring: there is no evidence of any racially derogatory com-

ments, no evidence of any ugly or racially charged incidents in the office, nor statistical information which might suggest some sort of suspicious racial disparity in employment.[3] Even if a fact finder could conclude on the basis of the surveys that Hogan did have a history of discriminatory racial animus toward African–Americans, Hogan was only one of three members who selected Paone. Although, Hogan was the person who selected the members of the panel, he selected one African–American as part of the panel and all of the members voted to select Paone over Plaintiff and the other candidate. Lastly, the fact that Paone was expedited through the LEAP program by Hogan suggests, if anything, that the decision to hire Paone was motivated, not by any racial animus toward Price, but by unrelated favoritism toward Paone. Favoritism does not imply racial discrimination. *Cf. Bennett v. Total Minatome Corp.*, 138 F.3d 1053, 1059–60 (5th Cir.1998). Indeed, a total of five applicants, all of them white, with as much or more experience than Price, were also rejected for the position. The Court concludes therefore that Plaintiff has not presented substantial evidence showing the existence of a fact issue as to racial discrimination. As Defendant is entitled to judgment as a matter of law, the Court must **GRANT** Defendant's Motion for Summary Judgment.

## IV. DEFENDANT'S BRIEF

Although the Court grants Defendant's Motion for Summary Judgment, the Court takes this opportunity to point out some serious professional defects in Defendant's Brief. Considering the caliber of the lawyers representing Defendant, the Court is shocked that the brief submitted supporting the Motion hardly even mentions the standards and burden shifting framework that are central in cases of this type. Other than quoting from a case which refers to the "McDonnell Douglas/Burdine anlay-

sis", the brief does not even cite to the *McDonnell Douglas–Burdine* line of cases, much less perform the traditional analysis. While this was not fatal to the Motion, the Court being quite familiar with the legal standards involved and having written on the subject many times, the brief did not display requisite familiarity with the relevant law and made it that much more difficult for the Court to evaluate the substance of the Motion. Nevertheless, given the lack of sufficient summary judgment to support Plaintiff's case, the Court must grant the Motion.

## V. CONCLUSION

Defendant's Motion for Summary Judgment is **GRANTED**. All of Plaintiff's claims for racial discrimination under Title VII are **DISMISSED WITH PREJUDICE**. The parties are also **ORDERED** to bear their own taxable costs and expenses incurred herein to date. In due course, the Court will enter a Final Judgment on all claims dismissed herein.

**IT IS SO ORDERED.**

### FINAL JUDGMENT

For the reasons set forth in the Order issued this date, Defendant's Motion for Summary Judgment is hereby **GRANTED** and Judgment is entered for Defendant. All parties are **ORDERED** to bear their own costs and attorney's fees incurred herein to date. **THIS IS A FINAL JUDGMENT.**

**IT IS SO ORDERED.**

---

3. Indeed Plaintiff himself, an African–American, remains employed by FedEx and has been promoted several times over his twelve year tenure.