IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 01-10655

Summary Calendar
_____


JANET SCOTT

                                    Plaintiff-Appellant


        v.

DMN INC, doing business as THE DALLAS MORNING NEWS

                                    Defendant-Appellee


_____

Appeal from the United States District Court
for the Northern District of Texas
No. 3:99-CV-2776-L
_____
January 22, 2002

Before KING, Chief Judge, and JOLLY and DeMOSS, Circuit Judges.

PER CURIAM:[*]

    Plaintiff-Appellant Janet Scott appeals the district court's

summary judgment in favor of Defendant-Appellee DMN, Inc., d/b/a

The Dallas Morning News on her claim alleging employment

---

    [*] Pursuant to 5TH CIR. R. 47.5, the court has determined
that this opinion should not be published and is not precedent
except under the limited circumstances set forth in 5TH CIR. R.
47.5.4.

discrimination based on race.  For the following reasons, we AFFIRM.

## I.  FACTUAL AND PROCEDURAL HISTORY

In June of 1998, Defendant-Appellee DMN, Inc. d/b/a The Dallas Morning News ("DMN") terminated its telemarketing employee, Plaintiff-Appellant Janet Scott.  Beginning on April 24, 1998, Scott failed to report to work, and after April 28, 1998, she failed to contact the employer at any time.  Scott also failed to provide any documentation explaining her absence.[2]  On December 8, 1999, Scott filed an employment discrimination claim against DMN, alleging that her discharge was based on race in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e et seq. (1994).  On February 7, 2001, DMN moved for summary judgment.  Scott failed to file any brief in opposition to DMN's motion for summary judgment.  The district court then granted summary judgment in favor of DMN.

## II.  STANDARD OF REVIEW

We review summary judgment de novo, applying the same standard as the district court.  Chaney v. New Orleans Pub. Facility Mgmt., Inc., 179 F.3d 164, 167 (5th Cir. 1999).  Summary judgment is appropriate when there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a

---

[2]  Scott was actually employed by DMN's subsidiary, DFW Suburban Newspapers, Inc.

matter of law.  FED. R. CIV. P. 56(c).  We view the evidence in the light most favorable to the non-movant.  Coleman v. Houston Indep. Sch. Dist., 113 F.3d 528, 533 (5th Cir. 1997).  However, the non-movant must go beyond the pleadings and come forward with specific facts indicating a genuine issue for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  When the non-movant fails to oppose the motion for summary judgment, the non-movant may not rest on the unverified complaint, but must point to evidence in the record in the form of affidavits, filed depositions, filed answers to interrogatories, or filed admissions.  Solo Serve Corp. v. Westowne Associates, 929 F.2d 160, 165, n.17 (5th Cir. 1991) (citing FED. R. CIV. P. 56(c)).

### III.  DISCUSSION

To establish a claim of racial discrimination in violation of Title VII based on discriminatory discharge, a plaintiff must first establish a prima facie case, including four elements: (1) that she is a member of a protected group; (2) that she was qualified for the position held; (3) that she was discharged; and (4) that she was replaced by someone outside of the protected group.  Byers v. Dallas Morning News, Inc., 209 F.3d 419, 426 (5th Cir. 2000).  If the plaintiff discharges this burden, the burden then shifts to the defendant employer to come forward with a legitimate non-discriminatory reason for the challenged discharge.  Id. at 425 (citing McDonnell Douglas Corp. v. Green,

3

411 U.S. 792, 802-04 (1973)).  Finally, the plaintiff must come

forward with evidence establishing that the employer's proffered

reason is pretext for discrimination based on race.  Id.

(citation omitted).

The parties do not dispute that Scott established a prima

facie case and discharged her initial burden within the

applicable McDonnell Douglas framework.[3]  We agree with the

district court that DMN then discharged its burden by coming

forth with a legitimate non-discriminatory reason for terminating

Scott - namely, that Scott violated DMN's established attendance

policy by failing to report to work for at least three

consecutive days without providing documentation explaining her

absence and thus was terminated for job abandonment.[4]  We further

---

[3]    Scott does not point to any evidence in the record
indicating that she was replaced by a worker outside her
protected minority class to satisfy the fourth prima facie
element.  The district court did not address this failure,
apparently assuming that Scott established a prima facie case.
In Byers, we noted that the fact that an employee was not
replaced by someone outside her protected class, while not
"irrelevant," is not dispositive and "'does not negate the
possibility that the discharge was motivated [by] discriminatory
reasons.'" 209 F.3d at 426-27 (quoting Nieto v. L & H Packing
Co., 108 F.3d 621, 624 n.7 (5th Cir. 1997)).  We also noted,
however, that a plaintiff must still come forward with sufficient
evidence of discriminatory intent to succeed on her claim.  Id.

[4]    Scott claims that the fact that there is no express rule
in DMN's written employee policies indicating that an employee
will be terminated after three consecutive days absence offers
evidence of pretext.  Although Scott is correct that DMN's
written company policy in evidence fails to indicate any express
three-day rule, Scott admits in her deposition testimony that she
was informed of the three-day rule by DMN human resources
personnel at the time she was hired.  Thus, the existence of the

4

agree with the district court that Scott failed to adduce evidence indicating a material issue of fact as to whether DMN's proffered reason for discharging her was pretext for racial discrimination.

It is uncontroverted in the record that Scott had an altercation with her direct supervisor, Roland Davie, on December 16, 1997.  In Scott's deposition testimony supplied by DMN as part of the employer's motion for summary judgment, Scott claims that during this altercation, Davie called her a "nigger" and hit her in the face.  Scott further testified that she provided written documentation of her version of events to DMN's human resources personnel.  Scott also testified that Davie told racial jokes on a regular basis, at a frequency of two or three times per week, two of which Scott recounted in detail.

DMN disputes these facts and claims, via the affidavit of its human resources manager, Rita Olivarez, that Scott never included reference to any racial epithets allegedly uttered by Davie in her descriptions to Olivarez of the altercation with Davie, nor provided any written documentation of the altercation, nor ever informed any DMN human resources employee that Davie told racial jokes or used racial epithets at any other time.[5]

---

three-day rule as an established DMN termination policy is uncontroverted.

[5]  Scott also claims that Davie manipulated calculation of her pay from telemarketing sales to reduce it after the altercation.  Scott admits in her deposition, however, that she

DMN further disputes Scott's claim that a company employee told Scott several days after the December altercation that Scott could only return to DMN's employ if she would not sue them, presumably for any claim arising from the altercation with Davie. It is undisputed that after the December altercation, Scott returned to her telemarketing position and continued to work through April 23, 1998. Although Scott's claims may create an issue of fact permitting an inference of impropriety in Davie's behavior toward her up to and including the events of December 16, 1997, they are not material to Scott's claim that her discharge five months later was based on race and not her unexplained absences.

Scott offers no evidence linking her alleged racially offensive interactions and altercation with Davie, up to and including December 16, 1997, to her discharge in June of 1998. Scott points to no evidence controverting DMN human resources manager Olivarez's affidavit testimony that Scott was terminated not because of Scott's interaction with Davie, but because Scott failed to report to work for at least three consecutive days commencing April 24, 1998, more than five months after the altercation with Davie. Olivarez testified that she was never made aware of any further problems between Davie and Scott

---

was aware that other employees experienced the same problems with improperly calculated pay and that a DMN customer service manager, Justice Thornburg, informed her that it was due to computer malfunction.

6

occurring after the December 16 incident.  Scott admits in her own deposition that neither Davie, nor any other employee of DMN, used any racial epithets or behaved in any other offensive manner toward her with respect to race after the alleged December incident.

Scott further fails to offer any evidence controverting Olivarez's testimony that on April 28, after Scott had been absent three consecutive days, Olivarez warned Scott that Scott would need to provide documentation of her claimed medical excuse for the absence.  Scott admits that she never supplied any such documentation and that she never reported to work after April 23 or contacted DMN after April 28.  It is likewise uncontroverted that DMN terminated Scott in early June 1998, at least a month after Scott failed to return to work at DMN or to contact the employer.  Scott further admitted in her deposition that she believed that if she had continued to report to work, DMN would not have terminated her.  Finally, Scott offers no evidence that Davie participated in any way in DMN's decision to discharge her. Even viewing the evidence in the record in the light most favorable to Scott, she fails to point to evidence in dispute that would allow a reasonable trier of fact to conclude that DMN's decision to terminate her because of consecutive unexplained absences was pretext for discrimination based on race.  The district court did not err, therefore, in granting

7

summary judgment to DMN on Scott's claim that her discharge was based on race.

### IV.   CONCLUSION

For the foregoing reasons, the district court's summary judgment in favor of DMN on Scott's Title VII race discrimination claim is AFFIRMED.